MARION F. CALLAHAN *vs.* ELIZA B. DICKSON.

Middlesex.     November 14, 1911. — January 3, 1912.

Present: RUGG, C. J., HAMMOND, SHELDON, & DeCOURCY, JJ.

*Landlord and Tenant. Negligence,* Of one owning or controlling real estate, Plaintiff's knowledge of defect.

In an action by a girl about nine years of age when injured, who was living with her father in a tenement hired by him from the defendant, for personal injuries caused by a defect in a plank walk at the side of a passageway leading from the house containing the tenement to a highway, if there is evidence that the defendant let the tenement to the plaintiff's father with the right to use the passageway as the only approach to it, that the passageway remained in the sole control and charge of the defendant, that at the time of the letting the plank walk was in good condition, that the defendant recognized the duty of keeping it in the same

condition and caused some repairs to be made upon it or a new walk to be laid either before or after the letting, and that after the letting the defendant allowed the walk to become defective and dangerous in such a way as to cause the plaintiff's injury, the question of the defendant's negligence is for the jury.

In an action by a girl about nine years of age when injured, who was living with her father in a tenement hired by him from the defendant, for personal injuries caused by the plaintiff's foot catching in a hole in a plank walk at the side of a passageway, which was maintained by the defendant as the only approach to the house containing the tenement and was in the defendant's charge and control, where there is evidence of the defendant's negligence in failing to maintain the walk in as good condition as it was in at the time the tenement was let to the plaintiff's father, if it appears that the hole "was about six inches wide and about the same in length " and the plaintiff has testified that she "had noticed the hole before pretty nearly every day for a month and a half," and there also is evidence, that the accident happened at about seven o'clock on an evening early in August, when it was pretty dark, that the plaintiff had had trouble with her eyes and was wearing glasses, and that when she tripped in the hole she was with her father going to see the fire engines go by, the plaintiff's previous knowledge of the defect, although it is a circumstance to be considered by the jury upon the question of her due care, is not conclusive against her upon that issue, and the question whether with reference to all the circumstances the plaintiff was in the exercise of reasonable care is for the jury.

Tort by a girl, about nine years of age when injured, for personal injuries alleged to have been sustained on August 4, 1907, by reason of the plaintiff's foot being caught in a hole in a plank or board walk leading from the tenement hired from the defendant by the plaintiff's father, when the plaintiff was in the company of her father and was in the exercise of due care. Writ dated September 23, 1907.

The answer was a general denial.

In the Superior Court the case was tried before *Schofield*, J. The following facts, among others, appeared at the trial.

The defendant was the owner of four double-tenement houses at the end of a private way known as Union Place, leading from Union Street, a public way of the city of Cambridge. The defendant also owned the fee in such private way, a strip of land sixteen feet wide, for a distance of sixty-five feet from the junction of Union Street and Union Place. The adjoining houses on either side faced on Union Street and did not open on this alley or way. At the distance of sixty-five feet from the street the defendant's land widened out to one hundred feet. The plaintiff's father lived in one of the houses at the end of Union Place and on the line of one side of it. This private way was the only passageway from the houses to Union Street.

There was evidence that, about a year before the accident, the defendant had built new walks on each side of the way, composed of three two-inch planks, each eight inches wide, laid longitudinally. The accident occurred on Union Place, half way between the houses at the end of Union Place and Union Street, on August 4, 1907, at about seven o'clock in the evening. The plaintiff lived with her father.

The following stipulation, signed by the attorney for the defendant and the attorney for the plaintiff, was filed in the case: "In the above entitled cause, it is admitted that the premises described in the declaration were owned by the defendant as alleged and were rented to the plaintiff's father by the defendant's agent, as alleged in the declaration. It is also agreed that the walk described in the declaration was under the control of the defendant."

The plaintiff, among other matters, testified as follows: "At the time I was hurt I had been living at No. 4 Union Place about one and one-half years. I had had trouble with my eyes. I went to the eye and ear hospital that year, I think, and was wearing glasses at that time, I think. I could not see very well without glasses. I could see pretty well with them. I had my glasses on at the time I was hurt. It was about seven o'clock that I was hurt on that Sunday. I was going out in the street to see the fire. There were two families living in each house, and two houses on each side of Union Place. There was a driveway between the houses and the street, with walks on both sides. I was going to the fire and I tripped with I do not know which foot, but I tripped and fell and sprained my hand. I was going out to the fire, and I was walking along and I did not see the hole, and I caught my foot in the hole and tripped. The hole was on the boards and on the inside, in the plank walk in Union Place. It was kind of dark, pretty near dark. I had noticed the hole before pretty nearly every day for a month and a half, and I might have noticed it further back than that. I do not know whether I had seen it before that or not. There was a lot of holes in both sides of the boards. There were two boards about six inches long on each side, and there was quite a lot of holes from the street in."

Upon cross-examination, the plaintiff testified, among other

things, that the piece that was gone from the plank walk at the place where she tripped was about six inches wide, that her father was with her when she tripped, that they were going to see the fire engines go by and that Union Place was the only way of getting from the tenement to the street.

The plaintiff's father testified, among other things, that at the time of the accident he was living at 4 Union Place, Cambridge, that Union Place was the sole means of access to the house in which his tenement was, that he had moved into the house about a year and a half before the accident, that the plank walk was about twelve or fourteen inches wide, that when he moved into the house " this board walk was in pretty good condition," that after the witness had moved there the condition of the walk became defective, and that there was a hole " about six inches wide, right in the middle of the walk," that the hole " was about six inches wide and about the same in length."

On his cross-examination, the plaintiff's father, among other things, testified as follows : " My intention was to go to the end of Union Place and see the engines passing. I started from the steps as soon as I heard the first sound of the alarm, that is, as soon as I found out what box it was. I did not run. I started to walk. I was not in any hurry. I walked leisurely. I walked slow, so that the little girl had no trouble in keeping up with me. I had hold of her hand. I did not pull her. I was on the outside of the walk. . . . I cannot say whether I had hold of my little girl's arm or not at the time of the accident, or whether she had hold of my coat. I might have been several feet ahead of her, and I cannot say whether I was some ways ahead of her. What attracted my attention to her was that she screamed when she fell. I turned round and picked her up."

At the close of the evidence the defendant asked the judge to make the following rulings :

" 4. The defendant was not obliged to keep the private way in repair, except opposite plaintiff's house.

" 5. If plaintiff knew that there were holes in the plank walk, it was her duty to avoid them, and if she continued to use said walk, she was not using due care, and she cannot recover.

" 6. It does not appear from the evidence that the plaintiff

was in the exercise of due care, and for that reason the plaintiff cannot recover.

" 7. If the alleged defect in the plank walk had existed for a month and a half, it was an obvious risk which the plaintiff assumed, and she cannot recover."

" 9. On all the evidence, the plaintiff cannot recover, and the verdict should be for defendant."

The judge refused to make these rulings, except so far as the seventh was given in a supplementary charge. A part of such supplementary charge was as follows : " The tenant at the time of the letting takes the risk of such defects as that [described in the plaintiff's evidence], namely, defects which are obvious, which would be noticeable and seen by a person of ordinary prudence and vigilance in examining the property. The members of his family would take the property under the same conditions under which he took it at the time of the letting, and subject to the same obvious risks ; but if the walk was not in that defective condition at that time, and afterwards became defective, then neither the tenant nor the members of his family take the risk of such defects, so that they are not barred from recovering damages against the landlord simply by the fact that they know the defects exist."

After other instructions the judge concluded as follows: " But if the plaintiff proves the case upon the ground which I have stated, and the duty was imposed upon the landlord from the existence of that tenancy to use reasonable care to keep this walk in the condition in which I have stated, and it became defective, and the defects were known, the duty on the part of the plaintiff is to use reasonable care with reference to all the circumstances. It cannot be said as a matter of law, that the existence of an obvious defect under these conditions, and knowledge of it by the plaintiff, of themselves defeat her action. It is a question for the jury whether she used reasonable care."

The jury returned a verdict for the plaintiff in the sum of $50 ; and the defendant alleged exceptions.

*H. S. Riley*, for the defendant.

*A. L. Richards*, for the plaintiff.

SHELDON, J. The jury could find that the defendant leased the tenement on Union Place to the plaintiff's father, with the

right to use that passageway as the sole approach to and from the tenement, that the passageway remained in the sole control and charge of the defendant, and that she assumed the duty of keeping it and the board walk which ran through it in as good condition for the use of the father and his family as at the time of the letting. *Faxon* v. *Butler*, 206 Mass. 500. *Miles* v. *Janvrin*, 200 Mass. 514. *Domenicis* v. *Fleisher*, 195 Mass. 281. *Andrews* v. *Williamson*, 193 Mass. 92. *Leydecker* v. *Brintnall*, 158 Mass. 292. There was also evidence that the defendant recognized this duty (*Nash* v. *Webber*, 204 Mass. 419, 425), and caused some repairs to be made on the walk or a new walk to be laid down, whether before or after the letting to the plaintiff's father may not be wholly clear on the evidence. There was evidence also that since the letting the walk was allowed to become defective and dangerous, in such a manner as to warrant an inference of negligence on the part of the defendant.

And there was evidence of due care on the part of the plaintiff. Her previous knowledge of the defect was a circumstance to be considered, but it was not conclusive against her as matter of law, though the jury might have found it to be so in fact. *Page* v. *Weymouth*, 207 Mass. 325. *Frost* v. *McCarthy*, 200 Mass. 445, 448. For the same reasons it could not be ruled that she had assumed the risk of injury from the defect even if this defense was open under the answer.

It follows that each one of the defendant's requests was rightly refused.

A different question would have been presented if it had appeared that this passageway, though a private way, had been wrought into the similitude of a public street, and if there had not been evidence that the defendant had assumed a duty in regard to it. We express no opinion upon such a question.

*Exceptions overruled.*