BAUM, Respondent, vs. BAHN FREI MUTUAL BUILDING &
LOAN ASSOCIATION, Appellant.

*November 4, 1940—March 11, 1941.*

118

For the appellant there were briefs by *Bendinger, Hayes, Kluwin & Schlosser* of Milwaukee, and oral argument by *Gerald P. Hayes.*

For the respondent there were briefs by *Sydney C. Charney* of Milwaukee and *Wm. E. Kaplan* of Wausau, attorneys,

and *H. A. Kovenock* of Milwaukee of counsel, and oral argument by *Mr. Kovenock*.

The following opinion was filed December 3, 1940:

MARTIN, J.   Defendant contends that the trial court erred in denying its motion for a directed verdict; in refusing to change the answers of the jury to the seventh and eighth questions of the special verdict from "No" to "Yes;" in refusing to hold that plaintiff was not entitled to recover the item of $208 for nursing and medical expense; and that the court erred in refusing to grant defendant judgment notwithstanding the verdict for the reason that plaintiff had assumed the risk in her continued use of the known defective step.

All of defendant's contentions, except as to the item for nursing and medical expense, relate to the questions of assumption of risk and contributory negligence.   In that connection, defendant argues that the plaintiff knew of the unsafe condition of the step in question, and that in descending the porch steps at the time she was injured she failed to use ordinary care for her own safety and protection.

Plaintiff testified that when she rented the house from the defendant corporation in 1931, that defendant, through its secretary, agreed to make all the necessary repairs; that he told plaintiff she should report conditions in need of attention to their field agent when he came around to collect rent or to inspect the premises.   At different times she did report things in need of repair, such as the porch, the porch screen, and the roof.   It is true that at least a month or more prior to September 10, 1937, the date on which she sustained her injuries, she had called the attention of defendant's field agent to the condition of the step, referring to it as being in a bad condition, that the tread was loose, and that it would sink down when weight was put on it.   There is testimony to the effect that plaintiff's daughter, as well as the plaintiff, several

times told defendant's field agent that the step was "springy," and that it would sink about one fourth of an inch when stepped upon; that the field agent said that there was no danger, that the step looked all right and would not break. He said it was all right to use, but he promised to report it for repair. It appears that the field agent had charge of about two hundred houses for the defendant corporation, and that it was his duty to inspect and report all complaints of the tenants. He was so employed for about three years prior to the accident in question. Defendant had three regularly employed carpenters, and at times, had extra men engaged in making repairs to the buildings on the premises which it rented to its tenants.

Plaintiff testified that on the evening of September 10, 1937, in descending the steps, as she stepped on the second step from the top, the tread broke through; that it caved in near the center, causing her to fall all the way down the steps. The flats or treads of the six steps were twelve inches wide and the risers were eight inches high. It appears that the tread of the step had rotted underneath, but that there was no external appearance of this decayed condition until after the step had broken through. Both plaintiff and her daughter thought the step was in need of repair because it was "springy." They did not know of the rotted condition of the step prior to the accident. The jury by its answer to the seventh question found that plaintiff did not know and appreciate the unsafe and dangerous condition of the step which broke through and caused her to fall.

Defendant contends that the instant case is ruled by the case of *McGinn v. French,* 107 Wis. 54, 82 N. W. 724, in which case, at page 57, the court said:

"The evidence and findings of the jury disclose this state of facts: At the time the premises were rented, in April, 1896, the steps of this stairway were unsafe and dangerous, and

continued in that condition until the day of the accident, August 24, 1897. During all this time the plaintiff used the stairs daily, with full knowledge of such unsafe, dangerous, and defective condition."

In that case it appears that the stairway, consisting of four or five steps leading from a platform at the rear of the house to the ground, was in a dangerous condition from the time plaintiff moved into the house in 1896 until the date of the accident in 1897. It does not appear that the dangerous condition of the steps had been called to the attention of the owner after plaintiff and her family had moved into the house. There was no promise to repair and no assurance given, as in the instant case, that there was no danger in continuing to use the steps. In the case at bar the tread of the step was reported to the field agent as in need of repair because it was springy, that it would sag about one fourth of an inch when stepped upon. The rotted or decayed condition of the step was not visible, and the defendant had agreed to keep the premises in repair. The difference between the case of *McGinn v. French, supra,* and the instant case is factual. In that case, the jury found that the tenant, knowing the danger of loss or injury to be great, assumed the risk of injury by continuing to use the stairway. In the instant case the jury found that the tenant, in continuing to use the steps after knowing that the tread of the second step from the top was in need of repair, did not know and appreciate the fact that the tread of said step was in an unsafe condition. Knowledge that the tread of the step was springy and that it would sag when stepped upon does not mean that plaintiff knew and comprehended that the step was in such condition that it was in danger of giving way. The evidence in the case made a jury issue, and the finding of the jury has ample support.

The Restatement, Torts, p. 967, § 357, states the rule in cases where lessor covenants to repair as follows:

"A lessor of land is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession, if (a) the lessor, as such, has agreed by a covenant in the lease or otherwise, to keep the land in repair, and (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented."

At page 968 the Restatement gives the following illustration:

"A leases an apartment in a tenement house to B and agrees to keep the tenement in good internal repair upon notice by the tenant of the necessity of so doing. B notifies A that the ceiling of one of the rooms becomes in need of repairs. The condition is not such as to threaten an immediate fall of the ceiling. While B, C, his wife, and D, a friend, are eating supper in the room, the ceiling falls and causes harm to them. A is liable to B, C and D, if, but only if, the ceiling fell after A has time, subsequent to receiving B's notice, to make the repairs, had he exercised reasonable diligence and care."

In the instant case, defendant had ample time within which to repair the tread of the step in question after both plaintiff and her daughter had called defendant's field agent's attention to the springy and sagging condition of the tread of the step. Defendant quotes from 16 R. C. L. p. 1061, § 581, as follows:

"Even where the landlord is primarily liable to the tenant for personal injuries received from the defective condition of the demised premises, it has frequently been held that the right of the tenant to recover for such injuries may be barred by his negligent conduct in using the premises with knowledge

of their unsafe and dangerous condition, since in such cases the tenant, in thus placing himself in a position of danger, assumes the risk of any injury caused thereby."

At this point defendant ends the quotation, but the text continues:

"If the dangerous condition is *open and obvious,* and the tenant voluntarily exposes himself to danger therefrom, and receives injuries, his contributory negligence is a bar to his claim against the landlord."

Generally, the mere fact that a tenant is aware of the defective condition of a portion of the premises, which it is the duty of the landlord to repair, does not, as a matter of law, make it contributory negligence to continue to use the same, if it reasonably appears that he might safely do so with the exercise of care. 34 L. R. A. (N. S.) 809. See *Finch v. Willmott,* 107 Cal. App. 662, 290 Pac. 660, 662; *Eckert v. Reichardt,* 243 N. Y. 72, 152 N. E. 469, 470; *Karlson v. Healy,* 38 App. Div. 486, 56 N. Y. Supp. 361; *Peil v. Reinhart,* 127 N. Y. 381, 27 N. E. 1077, 12 L. R. A. 843, 845; *Robinson v. Heil,* 128 Md. 645, 98 Atl. 195; *Callahan v. Dickson,* 210 Mass. 510, 96 N. E. 1029; *Dean v. Hershowitz,* 119 Conn. 398, 177 Atl. 262, 268; *Nutter v. Colyer,* 180 Mich. 107, 146 N. W. 643, 644.

Plaintiff's knowledge that the step was in need of repair because the tread was somewhat loose and springy does not charge her with knowledge of a dangerous condition due to the tread of the step being rotted or decayed on the lower side, which condition was not open and visible. In the Restatement of Torts, p. 928, § 340, in comment *b,* it is said:

"The words 'the risk' denote not only the existence of a risk but also its extent. Thus, 'knowledge' of the risk involved in a particular condition implies not only that the condition is recognized as dangerous but also that the chance of harm and the gravity of the threatened harm are appreciated."

The defendant's field agent's assurance that there was no danger, and that the step looked all right, would naturally lead the plaintiff to believe that she might continue to use the step in perfect safety.

Defendant's next contention is that plaintiff cannot recover the item of $208 for nursing and medical expense because same is an obligation of the plaintiff's husband. It appears that plaintiff agreed to pay these bills. The doctor and nurse so testify. Since the adoption of sec. 6.015, Stats. in 1921, a married woman is free to make her own personal contracts. *First Wis. Nat. Bank v. Jahn,* 179 Wis. 117, 190 N. W. 822; *Hoeper v. Wisconsin Tax Comm.* 284 U. S. 206, 52 Sup. Ct. 120, 76 L. Ed. 248, 250. The issues presented questions of fact for the jury. There is credible evidence to support their findings. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 11, 1941.