LANDSKRON, Respondent, vs. HARTFORD ACCIDENT & IN-
DEMNITY COMPANY and another, Appellants.*

*October 16—November 10, 1942.*

* Motion for rehearing denied, with $25 costs, on January 12, 1943.

For the appellants there was a brief by *Hanson, Weinke, O'Neill & Tonjes* of Fond du Lac, and oral argument by *Edward T. O'Neill.*

For the respondent there was a brief by *O'Leary & Joyce* of Neenah, and oral argument by *John W. O'Leary.*

FRITZ, J. The judgment appealed from is for the recovery of damages by the plaintiff, Mildred Landskron, from the defendants, Emil Guelzow and W. F. Landskron and their insurance carriers, for injury sustained by plaintiff in a collision between an automobile operated by W. F. Landskron, in which she was riding, and a snowplow coupled ahead of a truck operated by Guelzow. The collision happened on a stormy day with swirling snow in February at a place where a private driveway entered Highway 41 from the west. Landskron's automobile was approaching from the north on Highway 41 and was following at one hundred to one hundred fifty feet an automobile operated by Joe Messnick on the west half of the concrete roadway. As Messnick was about to pass the driveway entrance the front end of his automobile collided with the left front wheel of the truck, which Guelzow drove onto the highway from the driveway. As those vehicles came to a stop on the west half of the concrete, Landskron turned his car to the left in order to avoid striking Messnick's car, and then collided with the upper left corner of the blade of the snowplow, which extended onto the east half of the concrete roadway.

Upon the trial the jury found (1) that W. F. Landskron was causally negligent in respect to keeping a proper lookout, the speed at which he drove, and his management and control of his car; (2) that Guelzow was causally negligent in respect to keeping a lookout, and yielding the right of way to Landskron, but was not negligent in respect to management and control, and bringing the truck to a complete stop before he entered upon the highway; and (3) that plaintiff was not negligent in respect to keeping a lookout, and making a timely and proper protest as to the speed at which W. F. Landskron drove and the manner in which he operated his car. The court denied appellants' motions after verdict to have the court change some of the jury's findings, and for judgment

notwithstanding the verdict; and on plaintiff's motion there was entered the judgment for her recovery from the defendants, from which Guelzow and his insurer appealed. They contend that the court erred in not holding plaintiff guilty of contributory negligence, as a matter of law, and therefore setting aside the jury's findings to the contrary; and also erred in not setting aside the jury's findings that Guelzow was causally negligent in respect to keeping a proper lookout, and not yielding the right of way.

In passing upon those contentions the following facts must be noted. Highway 41 was straight for over eight hundred sixty-five feet north of the driveway, and on an upgrade so that at a point one hundred thirteen feet north thereof it was two feet higher than at the center of the driveway. North of that higher point the highway sloped downward, and at two hundred sixty-five feet from the driveway it was four feet lower than at that higher point, so that at all times while a southbound car was approaching within the distance of two hundred sixty-five feet it could be seen, if visibility was not otherwise impaired, from the driver's seat of a vehicle entering the highway from the driveway. The over-all length of the truck and snowplow blade was twenty-six feet, and the left upper corner of the blade was seven feet ahead of the radiator. Guelzow, after plowing southward on the west half of the highway, had backed his truck into the driveway in order to turn around and plow northward on the east half of the highway. He testified and claims that while the truck was facing partly northeast, preparatory to re-entering the highway, he again brought it to a stop with the blade of the snowplow within a few inches of the concrete; that he lowered the window on the left side of the cab and looked to the north, and his vision was unobstructed for one hundred fifty feet, but beyond that the crest of the hill and swirling snow combined to make visibility poor; that seeing no vehicle approaching from the north, he put the truck in low

gear and started out onto the highway; that after he moved three or four feet he saw, for the first time, Messnick's car coming over the top of the hill, one hundred thirteen feet to the north, and knowing that he would not have time to get the truck over onto the east half of the roadway, he immediately stopped within three or four feet, leaving open to traffic ten to twelve feet of roadway to the east; but that the left front wheel of the truck was struck by Messnick's car. On the other hand, Fitzpatrick, who was Guelzow's helper and sitting to his right in the cab, testified that as he looked to the north he could see one hundred feet beyond the hill, which distance, together with the one hundred thirteen feet from the driveway to the hill would make the total distance of the visibility two hundred thirteen feet. Obviously, if Messnick's car was not in sight, as Guelzow claims, when he had the unobstructed view for one hundred fifty feet to the north and the car was coming over the crest of the hill one hundred thirteen feet north of the driveway when he first saw it, as he claims, upon having moved the truck forward three to four feet onto the concrete, then from the time Guelzow first saw Messnick's car to the time of the collision, the latter would have had to travel the distance of one hundred thirteen feet in order to arrive at the place of the collision, while the truck, with the brakes applied immediately by Guelzow, came to a stop in three or four feet before colliding with the car. As the jury could consider it incredible that Messnick's car traveled one hundred thirteen feet within the short time that the truck was stopping in but three or four feet, the jury could believe that the car must have been much closer than one hundred thirteen feet from the driveway when it was first seen by Guelzow; and that, inasmuch as he could and ought to have seen it sooner upon its coming into his unobstructed view of one hundred fifty feet to the north, he was causally negligent in keeping a proper lookout. And there was even greater

basis for so finding if the jury believed Fitzpatrick's testimony that the distance of visibility to the north was two hundred thirteen feet.

In connection with appellants' contention that the court erred in not setting aside the jury's finding that Guelzow was negligent in respect to yielding the right of way, he claims that because of his testimony that when he stopped before entering the highway, he saw no approaching traffic within the range of his vision and could therefore assume that none would be approaching at a lawful speed, there was no traffic to which he had to yield the right of way. The statute on the subject provides that—

"The operator of a vehicle entering a public highway from an alley, garage or private driveway shall yield the right of way to all vehicles approaching on such highway." Sec. 85.18 (9), Stats.

As in the case at bar there was in fact traffic approaching within the range of Guelzow's vision, and the jury could and did find under the evidence that he was causally negligent in failing to keep a proper lookout, there are applicable the conclusions stated in *Carlson v. Strasser,* 239 Wis. 531, 535, 2 N. W. (2d) 233, viz.,—

"One entering a public way from a private drive is bound to maintain a proper lookout. If he is causally negligent in the matter of maintaining such lookout that fact would indicate that he could have seen an approaching car and was consequently under a duty to yield the right of way."

Consequently, as Guelzow's negligence in respect to keeping a proper lookout can be deemed to indicate that he could have seen the approaching car, the jury could find that he could not rely upon the assumption that there would be no traffic approaching to which he had to yield the right of way, and that he was negligent in failing to yield the right of way to that traffic.

In support of appellants' contention that the court erred 'in not holding plaintiff guilty of contributory negligence as a matter of law, and in not setting aside the jury's findings to the contrary, appellants claim that the plaintiff is barred from recovering from them because she assumed the hazards by reason of the negligence of W. F. Landskron in respect to his keeping a lookout, his management or control, and the speed at which he was operating his automobile. There is no evidence of any prior negligent conduct or omission on the part of W. F. Landskron in respect to lookout or management and control because of which it could be held that there should have been some protest or refusal by plaintiff to continue the trip in order to avoid being chargeable with having acquiesced in such negligence. In relation to the speed at which W. F. Landskron drove, the evidence is to the following effect. From Neenah to Fond du Lac he drove at from fifty to fifty-five miles per hour. After that the weather was worse, and he estimated his visibility ahead to be limited to one hundred fifty feet because of swirling snow. The plaintiff testified,—

"From the time we left Fond du Lac and drove approximately 9 or 10 miles to the point of the accident I was well aware of the rate of speed at which my husband was driving, and from the time we left Fond du Lac until the collision occurred a period of at least 10 to 15 minutes elapsed. . . . During that period of 10 or 15 minutes I made no suggestions, corrections or protests as to my husband's method of driving, except that just shortly after leaving Fond du Lac I asked him to be a little more careful. . . . I believe that it was immediately after we left Fond du Lac that I asked my husband to be a little more careful or to drive a little slower, and I believe he slowed down about 3 or 5 miles an hour. I would say that at the time I spoke to him he was going between 40 and 45 miles an hour and that after I spoke to him he was going not more than 40 miles per hour. I was satisfied with the manner in which he was handling the car."

That evidence does establish that plaintiff had the ability to control the conduct of her husband, and knew she had such ability and the opportunity to do so; but it also establishes that some time prior to the accident she utilized such opportunity in respect to the speed at which he drove and that he then reduced the speed. On the other hand, there is no evidence that can be deemed to establish as a matter of law, without room for a finding to the contrary, that plaintiff knew, or ought to have known, in the exercise of ordinary care, that it was necessary to further reduce the speed or for her to exercise her control in that respect, or that she failed to utilize such opportunity with reasonable care. On the contrary, that she did not so know and that there was no such failure, could fairly be inferred by the jury under the evidence, and particularly in view of her testimony that, after her husband had slowed down to not more than forty miles per hour, upon her request that he be a little more careful and drive a little slower, she was satisfied with the manner in which he was handling the car. The jury's finding that she was not chargeable with contributory negligence was warranted under the circumstances and the rule applicable thereto, as stated in the Restatement, 2 Torts, ch. 17, p. 1283, sec. 495, to wit:

"The plaintiff is not required to keep his eyes constantly on the speedometer to see whether the driver is exceeding the legal speed limit. He is required to call the attention of the driver to his excessive speed only when the speed is so great that a reasonable man would realize its excessive character."

That is in accord with the conclusions stated in *Fandek v. Barnett & Record Co.* 161 Wis. 55, 64, 150 N. W. 537. See also *Scory v. LaFave,* 215 Wis. 21, 28 *et seq.,* 254 N. W. 643.

On a motion for review, plaintiff contends that the court erred in determining that the amount assessed by the jury for medical, hospital, and nurses expenses, incurred as the result of her injury, is her husband's obligation and that therefore she is not entitled to judgment for the recovery of that

amount. In support of her contention plaintiff "suggests that the professional attendants were aware of the accident and assumed that the negligent parties would be responsible to her for necessary expenses incident to the treatment of her injuries and could reasonably look to her for payment." Such mere assumption by those who furnished services is not sufficient to render plaintiff liable. The record discloses that plaintiff did not specifically agree to pay for the services in question, nor ask specifically to have the bills therefor made out to her personally. Consequently, the decision in *Baum v. Bahn Frei Mut. B. & L. Asso.* 237 Wis. 117, 295 N. W. 14, is not in point, and plaintiff is not entitled to recover for the amount of the obligations in question.

*By the Court.*—Judgment affirmed.

* Motion for rehearing denied, with $25 costs, on January 12, 1943.