IN the MATTER OF the ESTATE OF Florence S. STROMSTED, Deceased: Todd R. STROMSTED and Richard V. Reiss, co-personal representatives of the estate of Florence S. Stromsted, deceased, Appellants,

v.

ST. MICHAEL HOSPITAL OF FRANCISCAN SISTERS, Respondent.

Supreme Court

*No. 79–1796. Argued September 30, 1980.— Decided November 25, 1980.*
(Also reported in 299 N.W.2d 226.)

For the appellants there were briefs by *Richard V. Reiss* and *Ludwig & Reiss* of Milwaukee, and oral argument by *Richard V. Reiss*.

For the respondent there was a brief by *Lorna J. Granger* and *Purtell, Purcell, Wilmot & Burroughs, S. C.*, of Milwaukee, and oral argument by *Lorna J. Granger*.

BEILFUSS, C. J.   This is an appeal from a judgment entered against the Estate of Florence S. Stromsted in favor of St. Michael Hospital. This judgment ordered the personal representatives of the Estate of Florence S. Stromsted to pay to St. Michael Hospital the sum of

$1,191.95 in satisfaction of a claim filed by the hospital against the estate. The estate appealed from the entry of this judgment. The court of appeals certified the matter to this court pursuant to the terms of sec. 809.61, Stats. We thereafter accepted the certification and ordered that this matter be scheduled for oral argument in conjunction with the case of *Sharpe Furniture, Inc. v. Buckstaff*, (Nov. 25, 1980) 99 Wis.2d 114, 299 N.W.2d 219 (1980).

On September 20, 1978, Florence S. Stromsted, the decedent, was admitted to St. Michael Hospital. At the time of her admittance, she executed an authorization for treatment. However, this form mistakenly listed the name of the decedent's husband, Thor Stromsted, as the patient for whom the authorization was given. Aside from this improperly executed authorization form, there existed no written agreements or other express agreements between the hospital and either the decedent or her husband to pay the charges. The decedent remained in the hospital until September 27, 1978. The charge for this period of hospitalization totaled $1,166.95.

The decedent was admitted to the hospital for a second time on December 20, 1978. She was pronounced dead upon arrival at the hospital. A charge of $25 was billed for this service.

On January 4, 1979, the hospital filed its claim in Estate of Florence S. Stromsted with the probate court in the amount of $1,191.65. The personal representatives objected to the claim on the ground that the decedent's husband and not the decedent was liable for the cost of these medical expenses.

The parties appeared before the circuit court on October 22, 1979. At the hearing, counsel for the hospital took the position that the decedent's estate was liable on

the basis of an "implied contract."[1] Counsel for the estate argued that a married woman is not liable under implied contract principles for medical services rendered to her. The trial court held that the estate could be legally bound for the value of the medical services and entered judgment as noted above.

This review requires us to examine another aspect of the necessaries doctrine. In *Sharpe Furniture, Inc. v. Buckstaff, supra,* it was held that the necessaries doctrine continues as a viable component of the common law and that a husband may be held liable for necessary items purchased by his wife on credit. Where a wife binds herself by agreement to purchase a necessary item, her husband is also bound by operation of law. This case requires the court to focus on the nature of the liability of the wife for necessary services or items which have been rendered or delivered in the absence of an agreement which would bind her under the terms of an implied-in-fact contract. Therefore, the question presented is whether a wife may be held liable for necessaries[2] in

---

[1] The precise nature of this implied contract as one which is implied-in-law or one which is implied-in-fact has been the subject of some confusion throughout the progress of this case. The hospital has never clearly delineated its position in this regard. [*See* fn. 4] The quasi-contract or contract implied-in-law differs markedly from a contract implied-in-fact. A contract implied-in-fact may arise from an express agreement or from an agreement as evidenced by circumstances which show a mutual intention to contract. *Kramer v. Hayward,* 57 Wis.2d 302, 306–07, 203 N.W.2d 871 (1973). On the other hand, *"a quasi-contract is a legal obligation, not based upon agreement, enforced either specifically or by compelling the obligor to restore the value of that by which he was unjustly enriched."* Corbin, *Quasi-Contractual Obligations,* 21 Yale L.J. 533, 550 (1912). *See also Seegers v. Sprague,* 70 Wis.2d 997, 1004, 236 N.W.2d 227 (1975) (recognizing relationship between quasi-contract and restitution theory).

[2] There is no question regarding the nature of the commodity in issue as a necessary item. Having considered the law in relation to the characteristics of items properly considered to be necessaries

the absence of an express contract, just as her husband may be found to be liable where he has not expressly agreed to pay for necessary items or services.[3]

The common law rule was that the wife had no liability for household necessaries. Indeed, the common law refused to recognize the legal capacity of married women in general. *See generally* Pollack & Maitland, *History of English Law* (2d ed. 1898), 404–05. The fiction of the wife's legal existence as merged in that of the husband was offered as the justification for this social status. *See First Wisconsin Nat. Bank v. Jahn,* 179 Wis. 117, 124, 190 N.W. 822 (1922) (discussion of common law in light of Wisconsin statutory law). Therefore the married woman could not be bound by her express agreements.

This common law principle has found expression in Wisconsin case law. In *Stack v. Padden,* 111 Wis. 42, 86 N.W. 568 (1901), this court held that a married woman could not bind herself by a contract at law for necessaries. In that case, a physician sued a married woman for the reasonable value of services rendered to her and to her son. The physician argued that a married woman may be held liable for necessaries if she has a separate estate. *Id.* at 43–44. The court rejected the argument and found no liability on the part of the wife.

Ch. 529, sec. 1 of the Laws of 1921 was thereafter enacted. This law created sec. 6.015, Stats. 1921,[4] which provided:

"**Women to have equal rights.** (1) Women shall have the same rights and privileges under the law as men in

___

in *Sharpe Furniture, Inc. v. Buckstaff, supra,* this aspect of the law of necessaries will not be repeated at length here.

[3] The hospital has argued that the common law requires alteration only in light of the changing social standing of women in society. No principle of constitutional law has been asserted in this controversy. In the absence of briefs and arguments on this issue, we decline to address any potential constitutional claim.

[4] This section is presently codified at sec. 766.15, Stats.

the exercise of suffrage, *freedom of contract,* choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, and in all other respects." (Emphasis added.)

Sec. 6.015 operated to remove the common law disability of married women with respect to freedom of contract. In construing this section of the statutes, this court had occasion to write:

"When sec. 6.015 says that 'women shall have the same rights and privileges under the law as men in . . . freedom of contract,' it means what it says, and that is that women shall be as free as men to make personal contracts." *First Wisconsin Nat. Bank v. Jahn, supra,* 179 Wis. at 125.

Sec. 6.015 had the effect of granting to married women the legal capacity with respect to the right to contract which the common law refused to grant.

The terms of sec. 6.015, Stats., left open the question of whether, in the absence of a contractual agreement, a married woman could be held liable for necessaries by virtue of a contract implied in law. Over the years, especially within the context of liability for medical services, this court has often held that a married woman had no such liability. In *Jewell v. Schmidt,* 1 Wis.2d 241, 250, 83 N.W.2d 487 (1957), the court said:

"The early rule was that it was the husband's absolute duty to pay for medical services to his wife, and that this duty could not be altered even where the wife agreed to pay the bills, recognized them as her personal debt, and in fact made payments on them from time to time from her separate estate. *Stack v. Padden* (1901), 111 Wis. 42, 86 N.W. 568. This absolute bar has been softened by subsequent decisions, based on the statutes extending the legal rights of married women. The present rule is that a married woman may contract for medical services in her own right, but, in the absence of the establishment of such an express contract between the wife and the per-

son rendering the service, the husband, and not the wife, is the person liable for such expenses and the one entitled to recover for them. [Cases cited.]"

The rule of *Jewell v. Schmidt, supra,* constitutes an application of the principles of the necessaries doctrine to a specific type of necessary service, *i.e.,* medical services. The rule had the effect of retaining the legal immunity of the married woman with respect to contracts for necessaries which are implied by the operation of law. Since the decision in *Jewell,* the principle that liability for medical services is borne by the husband and not the wife has been repeated on numerous occasions. *See e.g., Luther Hospital v. Garborg,* 71 Wis.2d 460, 462, 238 N.W.2d 529 (1976); *Seitz v. Seitz,* 35 Wis.2d 282, 295, 151 N.W.2d 86 (1967); *Fischer v. Fischer,* 31 Wis. 2d 293, 309, 142 N.W.2d 857 (1966); *Fee v. Heritage Mut. Insurance Co.,* 17 Wis.2d 364, 117 N.W.2d 269 (1962); *Puhl v. Milwaukee Automobile Ins. Co.,* 8 Wis. 2d 343, 349, 99 N.W.2d 163 (1959).

The hospital challenges this rule and seeks to impose direct liability on the wife on a theory of quasi-contract.[5] It is argued that, whatever purpose was served

[5] The hospital's brief contains no clear statement as to whether its theory of recovery is one premised upon a contract implied-in-fact or a contract implied by operation of law (quasi-contract). Indeed, counsel for the hospital did not answer a direct question at oral argument inquiring as to which one of the two theories of recovery formed the basis for the hospital's argument on review. We must assume that the hospital argues for liability on the basis of a contract implied-in-law. The rule of *Jewell v. Schmidt, supra,* which the hospital argues we must overrule, does not prohibit a woman from being held liable on a theory of a contract implied-in-fact. Although the rule of *Jewell v. Schmidt* is couched in terms of an "express" contract, "there is no difference between an express contract and an implied [in fact] contract; all contracts are express contracts. But there are *different modes* of expressing assent." 1 Corbin, *Contracts,* sec. 18, p. 39 (1963). In any event, we have examined the record in this case (consisting of several hospi-

by the old common law rule, that purpose is outdated in a society where women have become familiar components of the business and professional world. A theory of legal incapacity, it is argued, is anachronistic and does not have a place in modern society.

We agree with the essence of the hospital's argument. In *Sharpe Furniture, Inc. v. Buckstaff, supra,* this court noted that the nature of a husband's liability for his family's necessaries was essentially an obligation arising as a contract implied as a matter of law between the husband and the creditor. When a creditor proves that a commodity or service which is suitable and proper for the family and reasonably needed by it has been supplied to and used by the family without payment for the item, he has demonstrated the elements necessary for recovery under a theory of quasi-contract for unjust enrichment. *See Seegers v. Sprague, supra,* 70 Wis.2d at 1004. The husband, as a party liable for the support of the family, is viewed as the proper party against whom this liability should be enforced.

The woman shares with her husband the legal duty of support of the family. *See* sec. 767.08, Stats. There is nothing unique about the status of the married woman that it would prevent her from being liable on a theory of a quasi-contractual obligation. We therefore hold that a wife, in addition to obligations arising out of her implied-in-fact contractual obligations, may be held liable to an implied-in-law contractual obligation in a manner similar to that which her husband will be held liable

tal records introduced into evidence through the testimony of the hospital's director of patient accounts) and it is entirely inadequate to establish those actions or circumstances which would tend to show that the parties had an implicit mutual intention to contract.

as set forth in *Sharpe Furniture, Inc. v. Buckstaff, supra.* To the extent that our prior decisions have suggested otherwise, they are overruled.

We are not convinced, however, that a husband and wife should bear this liability as a joint and several obligation.[6] A creditor seeking to recover under the rule of necessaries must proceed against the husband as the primarily responsible party. He may thereafter seek satisfaction from the wife as a party secondarily liable on the quasi-contractual obligation.

Although in form it takes the shape of a quasi-contractual obligation, the essence of the obligation of husband and wife under the doctrine of necessaries is the support and sustenance of the family. *Sharpe Furniture, Inc. v. Buckstaff, supra.* This obligation extends to both spouses, however, the extent of the support obligation is not determined by dividing the amount of the household liabilities in half. Various factors are considered in the measurement of this duty, and the income and earning capacity of the spouses constitute a central aspect of any rule which seeks to assess liability for support. *Cf. Balaam v. Balaam,* 52 Wis.2d 20, 25, 187 N.W.2d 867 (1971).

We therefore deem it appropriate to fix the quasi-contractual obligation for necessaries in light of the general income-producing patterns of the contemporary family. We note that during the past five years, although married women have made substantial gains in the labor force, as a general matter they remain behind their marriage partners as an income-producing element of the

---

[6] *Compare Cooke v. Adams,* 183 So.2d 295 (Miss. 1966). *See also Jersey Shore Medical Center v. Estate of Baum,* 84 N.J. 137, 417 A.2d 1003 (1980).

family.[7] The husband, as the typically principal income-producer of the family, must be viewed as having primary liability for the necessaries of his household. To the extent that the husband is unable to satisfy his obligation in this regard, the creditor may seek satisfaction from the wife.

In this case, the hospital may not impose direct liability on Florence Stromsted for the charges for services rendered either on December 20, 1978[8] or September

[7] The most recent labor statistics are based upon figures compiled in 1978. These statistics indicate that, although married women make substantial contributions to the economic welfare of the family, wives accounted for only about 26 percent of the family income on the average. This datum has not been published as yet but was obtained through the Office of Special Labor Force Studies, Bureau of Labor Statistics, Department of Labor in Washington, D. C. This figure is corroborrated by the last published data compilation which also indicated that on the average, wives contributed about 26 percent to the family income. *See* "Labor Force Participation of Married Women," *Monthly Labor Review,* June 1977, p. 33. We also note that recent labor statistics give rise to the inference that a substantial number of married women remain outside of the labor force. As an annual average for 1979, about 49 percent of all women over the age of twenty were not a part of the labor force. "Current Labor Statistics," *Monthly Labor Review,* September 1980, p. 72.

[8] The hospital argues that, without respect to liability of the estate for necessaries, sec. 859.49, Stats., allowed the trial court to order the personal representatives to pay the $25 charge for services rendered on December 20, 1978 as an expense of the decedent's last illness. Sec. 859.49 provides:

"**Last illness and funeral expense of deceased spouse.** The reasonable expense of the last illness and funeral may, if properly presented, be paid by the personal representative of the estate of a deceased spouse and if so paid shall be allowed as a proper expenditure even though the surviving spouse could have been held liable for the expense."

The terms of this statute are permissive in nature and do not admit of the construction which the hospital seeks to place upon it.

20, 1978. In the absence of an express[9] contract, a creditor may sue a wife based on a theory of quasi-contract. A married woman cannot be viewed as being immune from such a suit as suggested in our decision in *Jewell v. Schmidt*, 1 Wis.2d 241, 250, 83 N.W.2d 487 (1957), and its progeny. However, where the creditor seeks to impose liability for necessaries that have been provided to the family of the married woman or the married woman herself, we believe that considerations regarding the nature of the liability for support require the creditor to first seek satisfaction from the husband as the party primarily liable.

The judgment of the trial court which held the estate liable for the medical services rendered to the decedent must be reversed. There is no indication in the record that the hospital, as a prerequisite for recovery against the estate, unsuccessfully sought to obtain satisfaction from the decedent's husband. For this reason, the claim of the hospital must be denied.

*By the Court.*—Judgment reversed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). The record in this case is almost devoid of facts. Yet the majority fashions a new rule governing liability for necessaries. I dissent.

We know only that Mr. and Mrs. Stromsted were husband and wife; that they were living together at the time Mrs. Stromsted consented to and received medical services; that Mrs. Stromsted committed suicide; that the hospital filed a claim against her estate; that the estate refused to pay the claim asserting that the husband should be liable, not the estate. We do not know anything about the past dealings between husband, decedent and doctor, or the wage earning responsibilities

---

[9] The express contract to which we refer includes all those contracts which may be implied-in-fact. *See* 1 Corbin, *Contracts, supra,* at secs. 18 and 19, pp. 39–50.

of the decedent or her husband, or the respective financial resources or earning abilities of the decedent or her husband. In light of the paucity of the record, I would remand the case to the trial court for a hearing, for findings of fact, and for decision by the trial court on the facts.[1] When the facts are known, the estate's

---

[1] The majority states that "The rule of *Jewell v. Schmidt, supra* . . . does not prohibit a [married] woman from being held liable on a theory of a contract implied-in-fact." p. 142, n. 5. However, the court's statement that the record is "entirely inadequate to establish those actions or circumstances which would tend to show that the parties had an implicit mutual intention to contract" indicates that the court continues to treat men differently from married women for purposes of determining whether there was a contract implied in fact. If, for example, a man enters the emergency ward of the hospital and signs a consent to treatment form as in the instant case, the court would hold on these facts standing alone that the man is bound by an express contract to pay, that is the court would find an implied-in-fact contract. The court would reason that the circumstances show that the male promised to pay the hospital for services rendered at their current price. Restatement (Second) of *Contracts,* Tentative Draft No. 1 (1964), Section 5, Illustration 1. In contrast, under our prior cases, which are apparently not reversed by the majority opinion, if a married woman enters the hospital and signs a consent to treatment form as in the instant case, these facts standing alone would not justify holding her liable under an implied-in-fact contract. Under our prior cases the married woman is presumptively contracting on her husband's credit as his agent for the purchase of necessaries and not contracting on her personal liability.

Applying this presumption in determining whether the wife was liable under a contract implied in fact for the purchase of false teeth, the court wrote:

"It is contended that the [seller] and the [wife] understood from the course of the transaction of ordering, providing, and delivering these teeth that it was an individual and personal sale to the [wife] and that she personally assumed to pay for them. The facts and circumstances do not sustain this claim. True, the [seller] had no personal dealings with the . . . husband. But this is not necessary if the articles were purchased under circumstances indicating that they were supplied her in the usual manner as necessaries for which a husband is liable as such. The question is,

liability can be determined. The result may be plain once the facts are known. *Cf. Sharpe Furniture Co. v. Buckstaff,* 99 Wis.2d 114, 123, 299 N.W.2d 219 (1980), (Shirley S. Abrahamson, J., concurring).

As I explained in *Sharpe,* I agree the common law rule governing liability for necessaries needs to be modified. The dilemma that faces the court in cases such as the instant one is that of drawing a rule which treats the creditor fairly while still serving the common law function of the doctrine of necessaries, that is, effectuating the support of a needy spouse. The majority sets a hard and fast rule which does not consider the economic circumstances of the spouses and abandons any effort to strike this balance between the creditor's rights and the needs of a spouse and society to secure the duty to support. Whatever the difficulty may be in drawing a rule in this area of the law, it is apparent that the rule cannot be gender based. In *Sharpe Furniture, Inc. v. Buckstaff,* 99 Wis.2d 114, 125, 299 N.W.2d 219 (1980) (Shirley S. Abrahamson, J. concurring), I stated my objections on constitutional and public policy grounds to the rule there announced which placed primary liability for necessaries upon the husband. The gender-based rule is extended in this case to impose secondary

Did the wife negotiate the purchase under circumstances indicating that she was authorized to do so? It appears with sufficient certainty that the [wife] attended to the dental affairs of herself and of other members of the family, including the payment of such bills. There is nothing in the record to show that she paid such bills out of her separate funds or estate. Presumably, then, she made the payments for the husband and father. This is sufficient to apprise the [seller] of this fact and he must be deemed to have dealt with her upon this basis, which showed her relation to the transaction." *Clark v. Tenneson,* 146 Wis. 65, 68, 130 N.W. 895 (1911).

*See also Olson v. Johnson,* 267 Wis. 462, 469, 66 N.W.2d 346 (1954).

liability for necessaries on the wife. The objections I made in *Sharpe* are applicable here and I reassert them.

The majority reasons that the wife should be secondarily liable because she "shares with her husband the legal duty of support of the family." Yet the law of support which underpins the doctrine of necessaries is not itself a hard and fast rule. The statutory duty to support is allocated between the marital partners on the basis of a number of factors. Sec. 767.08, Stats. Without any knowledge of the financial circumstances of the Stromsteds or of their relation with the creditor, *cf. Seifert v. Milwaukee S. T. Corp.*, 4 Wis.2d 623, 625–6, 91 N.W.2d 236 (1958), the court designates the husband primarily liable and the wife secondarily liable. It is the creditor's neglect which is remedied by the court in this case, not the neglect of one marital partner in the Stromsted marriage to support the family. In the instant case and in *Sharpe* the creditor failed to obtain either the wife's or the husband's express written or oral promise to pay for the goods or services. The creditor could have protected itself by preparing its written documents in proper form.

The creditor's benefit may be attained at a substantial cost to the homemaker. Under the majority's formulation, a full-time homemaker who has supported the family by contributing her services, who has little or no income or property, and to whom the husband owes the duty to support, becomes, in effect, a guarantor of payment for necessaries supplied to her husband, herself and the children. Our court has said that the earnings of the wage earner are "his property out of which he has the duty to support his family" and any funds left after payment of expenses of support belong to the wage earner, not to the homemaker. *Rasmussen v. Oshkosh Savings & Loan Asso.*, 35 Wis.2d 605, 611, 151 N.W.2d 730 (1967). Thus without control over the

"family" income or assets, the homemaker is now made liable for family necessaries. And the full-time homemaker cannot protect herself (or himself) from the liability imposed by this court in the instant case. The court has fashioned under the name of the doctrine of necessaries a creditor's remedy similar to the family expense statutes enacted in several states.[2]

It may be that a hard and fast rule not dependent on the economic circumstances of the spouses is the only kind of rule that is workable. Courts in other states faced with the problem of imposing liability on marital partners for necessaries supplied to one of them have, like the majority, adopted this type of hard and fast rule which, like the majority rule, probably produces a fair result

---

[2] I do not wish to overemphasize the point that the majority has transformed the doctrine of necessaries into a creditor's remedy. The doctrine of necessaries probably has never been an effective or satisfactory means of enforcing the right of support and has always, in reality, been more of a benefit to the creditor than to the needy spouse. The creditor is not obligated to supply necessaries to the family, and it is generally recognized that creditors have not supplied necessaries to the needy spouse relying on collecting from the husband on the basis of the uncertain and troublesome doctrine of necessaries.

The doctrine of necessaries has surfaced in Wisconsin in recent years in two kinds of cases. The more frequent type of case has been a personal injury suit in which the issue is whether the married woman or her husband is the proper party to recover reimbursement of expenses incurred for medical services provided the wife. *Baum v. Bahn Frei Mut. B. & L. Assoc.*, 237 Wis. 117, 295 N.W. 14 (1941); *Landskron v. Hartford Accident & Indemnity Co.*, 241 Wis. 445, 6 N.W.2d 178 (1942); *Fischer v. Fischer*, 31 Wis.2d 293, 142 N.W.2d 857 (1966); *Jewell v. Schmidt*, 1 Wis.2d 241, 83 N.W.2d 487 (1957); *Seitz v. Seitz*, 35 Wis.2d 282, 151 N.W.2d 86 (1967). The second type of case involving necessaries is illustrated by the *Sharpe* case and the case at bar; these cases involve a creditor suing a family member for payment for goods or services and are less frequent.

For family expense statutes, *see* Clark, *Domestic Relations: Cases and Problems* 601 (3d ed. 1980).

in some situations and an inequitable result in others. The Mississippi court imposed joint and several liability on the marital partners for necessaries. *Cooke v. Adams,* 183 So.2d 925 (Miss. 1966). The New Jersey Supreme Court rejected joint and several liability, concluding that "neither equity nor reality justifies imposing unqualified liability on one spouse for the debts of the other or exempting one spouse from liability for the necessary expenses of the other." The New Jersey court imposed primary liability on the spouse who incurred the expense and secondary liability on the other spouse. *See Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum,* 84 N.J. 137, 417 A.2d 1003 (1980).

I recognize the difficulties attendant in this area of the law. A simple ironclad rule applicable to all fact situations regardless of the economic circumstances of the spouses may be desirable. Nevertheless I would not decide the instant case until the trial court determines the relevant facts regarding the contract for services and the financial resources of the decedent and her husband. Rather than write broadly in an area already fraught with difficulties, I would rely upon a case-by-case determination to develop a means of deciding how the liability for necessaries in a modern household should be shared. As I said before, when the facts are determined, as they were in *Sharpe,* the result may be plain. I therefore dissent.