Thomas KUBS and Ruth Kubs,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 79–C–655.

United States District Court,
E. D. Wisconsin.

March 31, 1982.

Habush, Habush & Davis by Gary R. Kuphall, Milwaukee, Wis., for plaintiffs.

Joseph P. Stadtmueller, U. S. Atty. by Joel R. Levin, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiffs bring this action under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and the National Swine Flu Immunization Program of 1976, Pub.L.No.94–380, 90 Stat. 1113, codified at 42 U.S.C. § 247b(j)–(*l*) (1976). This act no longer appears in title 42, *see* Pub.L.No.95–626, 92 Stat. 3551. A one-day trial to the court on the issue of liability was held on December 21, 1981. The parties have submitted posttrial briefs, and this decision constitutes the court's findings of fact and conclusions of law, pursuant to Rule 52, Federal Rules of Civil Procedure.

## I. BACKGROUND

Mr. Kubs received a swine flu immunization shot on December 2, 1976. This shot was administered as part of a nationwide vaccination program to combat a feared epidemic of swine flu. The history of this program is discussed in detail in *Gicas v. United States*, 508 F.Supp. 217, 218–19 (E.D.Wis.1981), and *Bean v. United States*, 533 F.Supp. 567 (D.Colo., 1980), and need not be set forth here. At the time he received the shot, Mr. Kubs was 58 years old.

Prior to receiving the inoculation, Mr. Kubs was in good health. He did not suffer from any chronic illness and had been treated once or twice for relatively minor accidents. He had been engaged for many years in the physically strenuous work of cheesemaking, but he had recently quit that occupation to work in a factory manufacturing windows. He had been working steadily prior to the vaccination. He spent much of his free time engaged in outdoor pursuits. He frequently snowmobiled; he also liked to hunt and fish and spent considerable time at both activities.

His health history after he received the swine flu shot is disputed, but it is undisputed that on January 17, 1977, Mr. Kubs was examined by his family doctor, Dr. Jack Millenbah, who prescribed some medication for a cough that Mr. Kubs had. Mr. Kubs testified that during this period he was experiencing weakness in his arms and legs and severe fatigue. This weakness caused him to forego certain social activities during the holiday period and caused him to curtail sharply his outdoor recreation. At

work, he was given less strenuous jobs. The weakness and fatigue progressed until by early March he was frequently unable to raise himself from a chair or to dress himself. He also was unable to do the most simple activities with his arms and legs.

On March 17, 1977, Mr. Kubs visited the Marshfield Clinic; he was eventually examined by Dr. David Bjarnason, a rheumatologist. Dr. Bjarnason diagnosed Mr. Kubs' ailment as polymyalgia rheumatica. The government does not dispute this diagnosis. Treatment for this condition continues.

The Kubs filed this action on August 17, 1979, alleging that the swine flu vaccine caused Mr. Kubs' condition. On October 30, 1979, this action was transferred by the judicial panel on multidistrict litigation to the United States district court for the District of Columbia for coordinated pretrial proceedings, pursuant to 28 U.S.C. § 1407. On June 9, 1980, this case was remanded to this court for all further proceedings.

## II. LIABILITY

The plaintiffs contend that the swine flu shot caused Mr. Kubs' polymyalgia rheumatica. Polymyalgia rheumatica is a condition found primarily in older persons, who experience

"... the slow onset of the disease with generally fatigue, maybe a loss of appetite, loss of weight, very nondescriptive of symptoms, but ... then they always develop proximal muscle pain, usually neck, shoulders, lower limb, [pelvic] girdle, that type of pain. And, this is often very severe, disabling pain." Deposition of Dr. David Bjarnason, June 30, 1981, p. 39; plaintiffs' exh. 2.

Polymyalgia rheumatica is also accompanied by a rapid increase in the erythrocyte sedimentation rate. The condition can persist for long periods, often years. Medical science has not yet identified its cause, but the condition does respond to treatment with low doses of certain steroids. *See* Bjarnason deposition.

The plaintiffs contend that Mr. Kubs first began to suffer the fatigue that is symptomatic of polymyalgia rheumatica in December, 1976. The government argues that Mr. Kubs' medical records do not substantiate that claim. Dr. Millenbah's notes of his examination of Mr. Kubs in January, 1977, make no mention of fatigue or weakness. *See* defendant's exh. 104. Similarly, a note in the records of the Marshfield Clinic dated March 17, 1977, states: "This 56 [sic] year old man is seen today for a problem of pain and stiffness in the shoulders and hips of approximately one month duration." Plaintiff's exh. 7. The entry also states:

"About one month ago he was told that his blood pressure was elevated. At about that time he developed a pain and stiffness in the shoulders which has been severe in the past week, and interfere with his activities."

An entry by Dr. Bjarnason dated March 24, 1977, reads: "The patient is a 58 year old man referred ... for evaluation of arm and leg pains the patient has had for 23 weeks." *Id.; see* Bjarnason deposition, p. 6.

The plaintiffs contend that these references only allude to the more severe symptoms suffered by Mr. Kubs; he had experienced less severe symptoms soon after he received the swine flu shot. Even if this contention is accepted, *arguendo*, the plaintiffs must do more than establish that Mr. Kubs suffered certain symptoms soon after he received the shot. The swine flu program vaccinated over forty million people; coincidence of the shot and other, unrelated events is inevitable. *See* deposition of Dr. Neal Nathanson, p. 41, defendant's exh. 101; *see also* multidistrict deposition of Dr. Joseph A. Bellanti, p. 66, defendant's exh. 101B. "A temporal relationship between the date of the swine flu inoculation and the onset of the plaintiff's injuries is an insufficient basis upon which to attribute causation." *Gicas, supra,* 508 F.Supp. at 222; *citing Cikins v. United States,* No. 78–328–A (E.D.Va., June 16, 1980); *accord, Tabaczynski v. United States,* 529 F.Supp. 156 at 162 (E.D.Mich., 1981); *Spruell v. United States,* 79–418–C, slip op. at 11 (E.D. Okla., November 3, 1981); *Bean, supra,* at 581.

Dr. Bjarnason, the rheumatologist who diagnosed Mr. Kubs' polymyalgia rheumatica, could not state whether the swine flu vaccine caused Mr. Kubs' condition. Bjarnason deposition, pp. 41–42; *see* plaintiffs' exh. 8. He also testified that he was unaware of any medical literature that established a relationship between polymyalgia rheumatica and the swine flu vaccine, or any other vaccine. *Id.* at 43, 45.

The plaintiffs argue that two items of medical literature establish such a connection. Plaintiffs' exhibit number 9 is a reprint of an article from the March, 1976 issue of the American Journal of Medicine (volume 60) entitled "Arteritis of the Aged (Giant Cell Arteritis) and Fever of Unexplained Origin." This article presents four case histories of giant cell arteritis; case three indicates the onset of arteritis shortly after the patient received a flu vaccine. Plaintiffs' exhibit number 6 is a letter found in the May 11, 1974, issue of the British Medical Journal. In the letter, the authors write of a patient "who developed acute polyarteritis of a fulminating type following administration of a dose of inactivated influenza vaccine." The disease mentioned in both exhibits, giant cell arteritis, is a disease of the arteries that occurs primarily in older persons. Its cause is unknown, but it is similar in some respects to polymyalgia rheumatica, and some patients who have the latter also have giant cell arteritis.

The plaintiffs also offer the testimony of an expert witness, Dr. Joseph Bellanti. Dr. Bellanti is a professor of pediatrics and microbiology at Georgetown University and is the director of the International Center of Interdisciplinary Studies of Immunology at Georgetown. Dr. Bellanti testified that the swine flu shot caused Mr. Kubs' polymyalgia rheumatica. Deposition of Dr. Bellanti, September 9, 1981, pp. 25–28; plaintiffs' exh. 3.

Dr. Bellanti is not a rheumatologist, nor did he examine Mr. Kubs. His opinion regarding causation in part relied on plaintiffs' exhibit number 6, the letter to the British Medical Journal. Bellanti deposition, pp. 23–24. I find this letter to have little probative value; its brief contents are by authors of unknown qualifications. Since it is a letter, rather than a formal article, it was probably not subject to extensive peer review prior to publication. *See* Bellanti deposition, p. 127. The letter also only discusses an unidentified flu vaccine; the relationship between that vaccine and the swine flu vaccine is not established. Plaintiffs' exhibit number 9 does little to bolster their theory, for it does not state that the flu vaccine present in case 3 caused the patient's giant cell arteritis. The article only states: "The abrupt onset of illness shortly following her annual 'flu' immunization, although possibly coincidental, *may have* etiologic significance." *Id.* at p. 432 (emphasis added).

The plaintiffs' theory suffers from another significant weakness. One of the procedures performed on Mr. Kubs at the Marshfield Clinic was a temporal artery biopsy; the purpose was to determine whether Mr. Kubs was suffering from arteritis. The results were negative, and Dr. Bjarnason concluded that Mr. Kubs was not suffering from arteritis. Bjarnason deposition, pp. 13–14. Dr. Bellanti acknowledged that the test did not reveal arteritis. Bellanti deposition, p. 129.

The government presented substantial expert testimony at trial. It argues that the epidemiological study of the swine flu program, conducted by the Center for Disease Control, established that the swine flu vaccine caused Guillain-Barre Syndrome and infrequent cases of anaphylaxis, but was not responsible for any other illnesses. *See* defendant's exh. 101. This evidence, and the background to the study, was extensively discussed in *Gicas, supra,* at 221–22. The conclusion of the study that the vaccine caused only the two diseases mentioned above was rejected in *Hasler v. United States,* 517 F.Supp. 1262 (E.D.Mich., 1981), where the court found that the vaccine had caused the plaintiff's rheumatoid arthritis.

The government also offers the testimony of Dr. Gerson Bernhard, who testified at

trial. Dr. Bernhard is a rheumatologist who conducted an examination of Mr. Kubs for the purposes of this litigation. He testified that the swine flu shot did not cause Mr. Kubs' polymyalgia rheumatica. He also stated that there was no support in the medical literature for any causal connection. He noted that only approximately fifteen percent of those suffering from polymyalgia rheumatica also contract giant cell arteritis. Finally, he stated that there was no evidence that Mr. Kubs had the latter.

Weighing the conflicting expert testimony on causation, I conclude that the government's evidence is the more persuasive. I note that Dr. Bellanti's credibility has been severely questioned, *see Gicas, supra*, at 220, and his opinions that the swine flu vaccine caused various ailments repeatedly rejected. *E.g., Migliorini v. United States*, 521 F.Supp. 1210 (M.D.Fla.1981); *Gicas, supra; Baker v. United States*, 78–C–468, slip op. at 14–15 (E.D.Wis., March 27, 1981); *Hausler v. United States*, 79–2031–A (E.D.Va., March 17, 1981); *Gates v. United States*, 79–F–875 (W.D.Okla., March 2, 1981). I also note that Dr. Bjarnason, who treated Mr. Kubs and whom I consider far more qualified in this area than Dr. Bellanti, did not join in the latter's conclusion.

The plaintiffs' argument on causation is based on too many assumptions to be credible. *See Tabaczynski, supra*, at 162. The only established connection between the swine flu shot and Mr. Kubs' ailments is temporal. The plaintiffs' theory does not enjoy acceptance as a medical fact, the opinions based on such a theory can only be described as conjecture. *Puhl v. Milwaukee Automobile Insurance Co.*, 8 Wis.2d 343, 353–54, 99 N.W.2d 163 (1959); *overruled on other grounds, In re Estate of Stromsted*, 99 Wis.2d 136, 142–44, 299 N.W.2d 226 (1980). Thus the plaintiffs have not met their burden of proving causation by a preponderance of the evidence, and the government is not liable. *See generally, Merco Distributing Corp. v. Commercial Police Alarm Co.*, 84 Wis.2d 455, 460, 267 N.W.2d 652 (1978).

## CONCLUSION

Therefore IT IS ORDERED that this action be and hereby is dismissed upon its merits.