SHARPE FURNITURE, INC., a Wisconsin corporation, Plaintiff-Respondent,

v.

John D. BUCKSTAFF, Jr., and Karen Buckstaff, his wife, Defendants-Appellants-Petitioners.†

Supreme Court

*No. 79-277. Argued September 29, 1980.—
Decided November 25, 1980.*

(Also reported in 299 N.W.2d 219.)

† Motion for reconsideration denied, with costs, on January 13, 1981.

For the appellants-petitioners there were briefs by *Howard T. Healy* and *Di Renzo & Bomier* of Neenah, and oral argument by *Howard T. Healy*.

For the respondent there were briefs by *John M. Kelly* and *Dempsey, Magnusen, Williamson & Lampe* of Oshkosh, and oral argument by *John M. Kelly*.

Amicus curiae brief was filed by *Lawrence J. Bugge, Emory Ireland, Michael P. Erhard, James W. Loss* and *Foley & Lardner* of Madison, for Wisconsin Merchants Federation.

BEILFUSS, C. J.   This is a review of a decision of the court of appeals which affirmed the judgment of the circuit court for Winnebago county.   The judgment was entered against the defendants John D. Buckstaff, Jr., and his wife, Karen Buckstaff, requiring payment of sums due on the purchase of goods from the plaintiff, Sharpe Furniture, Inc., a Wisconsin corporation engaged in the business of retail furniture sales.

This controversy centers around the purchase of a sofa from Sharpe Furniture, Inc. (Sharpe).   The purchase was made by Karen Buckstaff on August 15, 1973.   On that date, Mrs. Buckstaff signed in her own name a special order for a "Henredon 6800 Sofa."   Under the

terms of the order she was to pay $621.50 within 60 days after the item was received from the factory. Interest at a rate of 1.5 percent per month was charged on the unpaid balance after that 60-day period. No representations were made to Sharpe at the time of the purchase that Mrs. Buckstaff was acting on behalf of her husband in purchasing the furniture. Indeed, John Buckstaff had previously written to the local credit bureau service to advise that office that he would not be responsible for any credit extended to his wife.

The Henredon sofa was received from the factory and delivered to the residence of the defendants on February 8, 1974. This piece of furniture has been a part of the Buckstaff home ever since its delivery. Despite this fact, neither John Buckstaff nor his wife have tendered payment for the sofa.

On November 20, 1975, Sharpe commenced this action against both Buckstaffs. The parties agreed to allow the trial court to decide the dispute on the basis of the undisputed facts as they appeared in the trial memorandum submitted by counsel. In addition to the facts already stated above, the informal stipulation of the parties reveals that John Buckstaff, Jr., is the president of Buckstaff Company of Oshkosh, Wisconsin. Mrs. Buckstaff is a housewife. Mr. Buckstaff earns a substantial income and the Buckstaff family is one of social and economic prominence in the Oshkosh area. It was further set forth that Mr. Buckstaff has always provided his wife with the necessaries of life and has never failed or refused to provide his wife with items which could be considered necessaries.

On the basis of these facts, the trial court found that Karen Buckstaff was liable on her contract and that John Buckstaff was also liable for the amount due on the sofa under the common law doctrine of necessaries. Judgment was entered accordingly. The court of appeals

affirmed. John Buckstaff now seeks review of the decision of the court of appeals. Karen Buckstaff has not sought appellate relief from the entry of the judgment against her.

There are two issues which we must consider in reviewing the decision of the court of appeals:

1. Whether, under the common law doctrine of necessaries and in the absence of any contractual obligation on his part, a husband may be held liable for sums due as payment for necessary items purchased on credit by his wife.

2. Whether, in an action for recovery of the value of necessaries supplied on credit to a wife, it is essential for the plaintiff-creditor to prove either that the husband has failed, refused or neglected to provide the items which have been supplied by the plaintiff-creditor or that the items supplied were reasonably needed by the wife or the family.

Before proceeding to a discussion of the merits of this case, we examine the substance of the doctrine of necessaries.

The Wisconsin Supreme Court restated the common law rule of necessaries early on in the history of the jurisprudence of this state. In 1871, in the case of *Warner and Ryan v. Heiden,* 28 Wis. 517, 519 (1871), the court wrote:

"The husband is under legal obligations to support his wife, and nothing but wrongful conduct on her part can free him from such obligation. If he fails to provide her with suitable and proper necessaries, any third person who does provide her therewith, may maintain an action against him for the same. 1 Bishop on Mar. and Div., sec. 553. The same learned author, in the next section (sec. 554), thus defines what are necessaries which the husband is bound to furnish to his wife: 'And, in general, we may say, that necessaries are such articles of food, or apparel, or medicine, or such medical attendance and

nursing, or such provided means of locomotion, or provided habitation and furniture, *or such provision for her protection in society,* and the like, as the husband, considering his ability and standing, ought to furnish to his wife for her sustenance, and the preservation of her health and comfort.' "[1]

This doctrine traditionally required the creditor to show that he supplied to the wife an item that was, in fact, a necessary and that the defendant had previously failed or refused to provide his wife with this item. *See, e.g., Eder v. Grifka,* 149 Wis. 606, 610, 136 N.W. 154 (1912). *See also* Brown, *The Duty of the Husband to Support the Wife,* 18 Va. L. Rev. 823, 824–35 (1932). When such a showing was made, the creditor was entitled to recovery as against the husband despite the fact that the husband had not contractually bound himself by his own act or by the act of an agent. The doctrine of necessaries is not imposed by the law of agency.[2] This duty is placed upon a husband by virtue of the legal relationship of marriage.[3] It arises as an obligation placed on him as a matter of public policy.

The appellant challenges the continued vitality of this common law rule. Mr. Buckstaff charges that the necessaries doctrine conflicts with contemporary trends toward equality of the sexes and a sex neutral society. He further argues that the doctrine is an outdated and inefficient means of compelling support. It is argued that various social welfare agencies and governmental institutions have replaced the doctrine of necessaries as a mechanism for the maintenance of the members of a household.

It is true that the necessaries rule has been justified in the past on the basis of a social view of the married

---

[1] A more extensive discussion of Wisconsin law will be presented below. *See* text accompanying fn. 5.

[2] *See, e.g., Ott v. Hentall,* 70 N.H. 231, 47 A. 80 (1899).

[3] Paulsen, *Support Rights and Duties Between Husband and Wife,* 9 Vanderbilt L. Rev. 709, 713 (1956).

woman as a person without legal capacity.[4] However, the nature of the woman's obligations under the necessary rule in relation to the obligation of her husband is not at issue here. That question has been treated in our decision in *Estate of Stromsted,* 99 Wis.2d 136, 299 N.W. 2d 226 (1980), wherein we concluded the husband was primarily liable for necessities and the wife secondarily liable. The question presented in this case involves a consideration of the nature of the husband's obligation. We must decide whether such a liability imposed upon the husband furthers a proper purpose in contemporary society.

We are of the opinion that the doctrine of necessaries serves a legitimate and proper purpose in our system of common law. The heart of this common law rule is a concern for the support and the sustenance of the family and the individual members thereof. The sustenance of the family unit is accorded a high order of importance in the scheme of Wisconsin law. It has been codified as a part of our statutes, *see e.g.,* sec. 767.08, Stats., and it has been recognized as a part of our case law. *See Zachman v. Zachman,* 9 Wis.2d 335, 338, 101 N.W.2d 55 (1960). The necessaries rule encourages the extension of credit to those who in an individual capacity may not have the ability to make these basic purchases. In this manner it facilitates the support of the family unit and its function is in harmony with the purposes behind the support laws of this state. The rule retains a viable role in modern society.

We view the nature of the husband's liability as a contractual duty implied in law, *i.e.,* a quasi-contractual obligation. In *Seegers v. Sprague,* 70 Wis.2d 997, 1004,

---

[4] *See generally* Pollack & Maitland, *History of English Law* (2d ed. 1898), sec. 403–05. *See also* Crozier, *Marital Support,* 15 Boston U.L. Rev. 29 (1935).

236 N.W.2d 227 (1975), the nature of the quasi-contract liability was discussed:

"[T]his court [has] recognized that subcontractors may have a basis for recovery in the quasi-contract action of unjust enrichment. In *Don Ganser & Associates, Inc. v. MHI, Inc.* (1966), 31 Wis.2d 212, 216, 217, 142 N.W.2d 781, the elements of such action were listed as:
" '. . . (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.' "

We conclude that when an item or service is obtained for the benefit of the family which is necessary and no payment for that item or service has been made, the elements of an action for an implied-in-law contract exist and the husband is primarily liable.

In light of the proper function of the necessaries rule in relation to the support of the family, in the absence of an express contract to the contrary, we hold that a husband incurs the primary obligation, implied as a matter of law, to assume liability for the necessaries which have been procured for the sustenance of his family.

Mr. Buckstaff's second argument is that, as a matter of law, he is not liable for the necessaries purchased by his wife because Sharpe did not plead or prove that he as a husband failed, refused or neglected to provide a sofa for his wife. It is also argued that liability cannot be found in the face of the parties' stipulation which states that Mr. Buckstaff has always provided his wife with the necessaries of life and has never failed or refused to provide her with items which would constitute necessaries.

There are three leading cases in Wisconsin concerning the nature of a creditor's action under the law of neces-

saries. The most recent of these cases was decided in 1924.

The law of necessaries was first recognized in the case of *Warner and Ryan v. Heiden,* 28 Wis. 517 (1871).[5] In that case the court ruled that a husband could be held liable for attorney's fees incurred by his wife in the course of defending against a criminal charge. *Id.* at 521. Such legal fees were viewed as necessaries for which the husband was responsible.

In the case of *Eder v. Grifka,* 149 Wis. 606, 136 N.W. 154 (1912), it was held that, besides demonstrating that necessaries were furnished by the creditor to the defendant's spouse, a plaintiff-creditor must also plead and prove that the defendant wilfully refused to provide the necessaries for his wife. The court wrote:

"A husband is not *ipso facto* liable for all necessaries that may be furnished his wife. It is only under circumstances and conditions showing a necessity that they be furnished her by others, such as his misconduct compelling her to leave him and their home, *his wilful refusal to provide for her,* or his deserting her, that the husband is liable for them." *Id.* at 610. (Emphasis added.)

In the absence of these special circumstances, the rule of *Eder* allowed no recovery for the creditor. The merchant sold to the wife at his own risk.

The merchant's burden of proof was modified by the decision in *Simpson Garment Co. v. Schultz,* 182 Wis. 506, 196 N.W. 783 (1924). The *Simpson Garment Company* decision involved a defendant whose wife purchased a coat, a dress and a slip for her daughter. The daughter was about to graduate from high school and lacked the proper attire for the commencement exercises. The wife pledged the defendant's credit in order to purchase the

---

[5] The rule of the case was quoted above and will not be repeated here. *See* text accompanying fn. 2.

items and when her husband refused to pay, a lawsuit was commenced. The defendant was found liable for the cost of the garments. In discussing the plaintiff's *prima facie* burden, the court said:

"When a merchant sues a husband for necessaries sold to his wife or some member of his family, it is incumbent upon him to show, among other things, (1) that the articles purchased were such as are suitable for the wife or member of the family in view of the family's social position in the community in which they live and in view of the defendant's financial ability to pay for them; and (2) that the articles sold were reasonably needed by the wife or member of the family to whom they were sold at the time of the sale." *Id.* at 509–10.

The *Simpson Garment Company* rule required only that the creditor show that the item was "reasonably needed" by the wife or family, and not that the husband wilfully refused to provide his wife with the necessary item as suggested by *Eder v. Grifka, supra.*

In applying the rule of the *Simpson Garment Company* decision to the case at bar, the creditor Sharpe must prevail over Mr. Buckstaff's two-pronged attack on the judgment. The latter's arguments are directed at the second element of the necessaries doctrine, *i.e.,* reasonable need of the family. Buckstaff's first argument, that the court's judgment of liability is invalid in the absence of a finding of refusal or neglect by a husband, must be rejected. Under *Simpson Garment Company,* the refusal or neglect of the husband is not an element essential to recovery by the creditor. Mr. Buckstaff's second contention is that the sofa should not be considered a necessary in view of the stipulation that he as a husband provided his wife with all necessaries. Whether or not, as a general matter, a man provides his wife with necessaries is irrelevant to a determination of whether a particular item is reasonably needed under the *Simpson Garment Company* rule. 182 Wis. at 510. This stipulation, which

is phrased in terms of the conclusion which it seeks to establish, is not probative of whether the sofa in issue was reasonably needed.

We have reviewed the stipulation of the parties in this matter and we are satisfied that ample evidence supported the trial court's conclusion that the Henredon sofa was a legally necessary item. The Buckstaffs are a prominent family and their socio-economic standing justifies a finding that the sofa at issue here was a suitable and proper item for their household. With reference to the element of reasonable need, we note that the sofa has been in use in the Buckstaff home since its delivery. Such continued use gives rise to an inference of reasonable need. This inference is not rebutted by the stipulation stating that Mr. Buckstaff provided his wife with "all necessaries."

Several spousal agency theories have been advanced as a ground for liability by both the repondent and by the Wisconsin Merchants Federation as *amicus curiae*. Having found that Mr. Buckstaff is liable on the independent ground provided by the necessaries rule, we need not reach these questions.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I join the court in retaining the doctrine of necessaries and imposing liability on Mr. Buckstaff for the cost of the sofa. I do not agree, however, with that portion of the opinion in which the court adopts a rule placing primary liability on the husband to the creditor for necessaries supplied to the family.[1]

---

[1] The court formulates the rule of necessaries as follows: "In light of the proper function of the necessaries rule in relation to the support of the family, in the absence of an express contract to the contrary, we hold that a husband incurs the primary obligation,

This case presents neither a novel fact situation nor a novel question of law. I believe that resolution of this case requires the court to do no more than apply the common law doctrine of necessaries to the facts. Mrs. Buckstaff is a full-time homemaker; her contribution to the support of the family is her domestic labor. Apparently she has no earnings or property in her own name.[2] Mr. Buckstaff is employed outside the home. He has income and property in his own name. Mrs. Buckstaff ordered the sofa for the family home, but she did not personally promise to pay for the sofa. On these facts the law in Wisconsin imposes the duty to support on the husband. The common law doctrine of necessaries which arises from and is ancillary to the duty to support allows a merchant to collect the cost of the necessary goods from the husband after extending credit to the wife. As the

implied as a matter of law, to assume liability for the necessaries which have been procured for the sustenance of his family." The court's view that the husband is primarily liable for necessaries is reiterated by the court in *In the Matter of the Estate of Stromsted*, 99 Wis.2d 136, 299 N.W.2d 226 (1980).

I interpret the phrase "in the absence of an express contract to the contrary" as retaining the rule that had Mrs. Buckstaff expressly promised that she would pay for the sofa, or had Sharpe Furniture expressly agreed not to seek reimbursement from Mr. Buckstaff, the husband would not be liable to the creditor under the doctrine of necessaries. 1 *Schouler, Marriage, Divorce, Separation and Domestic Relations* sec. 97 (Sixth Ed. 1921).

I assume the majority's use of the phrase "express contract" in this sentence includes both an express agreement and an agreement evidenced by circumstances which show a mutual intention to contract (contract implied in fact). See *In the Matter of the Estate of Stromsted*, 99 Wis.2d 136, 139 n. 1, 140–141, 142 n. 5, 145 n. 8, 146 n. 9, 299 N.W.2d 226 (1980).

[2] Had Mrs. Buckstaff earnings or property, Sharpe Furniture, which had obtained a default judgment in the sum of $715.00 plus interest against her, would have collected its judgment from her assets, released Mr. Buckstaff from any liability, and saved itself the expense of fighting Mr. Buckstaff's appeal to the court of appeals and to this court.

majority points out, the elements of the common law doctrine of necessaries have been proved in this case. Imposing liability for the sofa on Mr. Buckstaff comports not only with the common law doctrine of necessaries but also with the Wisconsin law of support which follows the contemporary trend toward equality of the sexes.

I recognize, as does the majority, that if the common law doctrine of necessaries is to survive as a rule of law it must be modified in accordance with the developing laws recognizing equal rights and responsibilities of both marital partners and the changes in the economic and social conditions of society. The common law doctrine of necessaries was premised on the legal disability of the married woman and on the husband's duty to support. Today, the married woman is free to contract, sec. 766.15, Stats., *Baum v. Bahn Frei Mut. B. & L. Assoc.*, 237 Wis. 117, 295 N.W. 14 (1941), and the duty of support rests not on the husband alone but on both the husband and wife. Sec. 767.08, Stats. While these changes in the law will require an alteration of the doctrine of necessaries, I would leave that alteration to a case in which the application of the common law doctrine conflicts with the married women statutes and the support statutes. This is not the case.

I believe the court has erred in adopting a flat, general rule which places primary liability on the husband to the creditor who supplies necessaries to the family. In my opinion, the rule suffers from two infirmities: First, the rule is not in harmony with the legislatively established public policy of this state which is to impose the obligation to support on both the husband and wife on the basis of their respective economic resources and not on one spouse or the other on the basis of gender. *See* secs. 767.08 (1), 767.25, 767.26, Stats.; sec. 52.055, Stats., amended by sec. 8, ch. 352, Laws of 1979. Second,

the rule discriminates against men and thus contravenes the state and federal constitutional guarantees of equal protection of law.[3] These constitutional provisions apply to the decisions of the courts, just as they do to the acts of the state legislature. *Shelley v. Kraemer,* 334 U.S. 1, 17 (1948); *New York Times Co. v. Sullivan,* 376 U.S. 254, 265 (1964).

I am persuaded that the majority rule which effects an unequal distribution of economic benefits and burdens on the basis of gender cannot pass muster under the federal and Wisconsin constitutions. *See, e.g., Wengler v. Druggists Mutual Ins. Co.,* 446 U.S. 142, 100 S. Ct. 1540 (1980); *Califano v. Westcott,* 443 U.S. 76, 99 S. Ct. 2655 (1979); *Orr v. Orr,* 440 U.S. 268 (1979); *Califano v. Webster,* 430 U.S. 313 (1977); *Califano v. Goldfarb,* 430 U.S. 199 (1977); *Craig v. Boren,* 429 U.S. 190 (1977); *Weinberger v. Wiesenfeld,* 420 U.S. 636 (1975); *Schlesinger v. Ballard,* 419 U.S. 498 (1975); *Kahn v. Shevin,* 416 U.S. 351 (1975); *Frontiero v. Richardson,* 411 U.S. 677 (1973); *Reed v. Reed,* 404 U.S. 71 (1971).

The New Jersey Supreme Court similarly concluded that a rule imposing liability for necessaries solely on

---

[3] The Fourteenth Amendment of the United States Constitution provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article I, sec. 1 of the Constitution of the State of Wisconsin provides:

"All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

the husband was unconstitutional under the federal and state constitutions, reasoning as follows:

"Under the [common law] rule, even a husband who is economically dependent on his wife would be liable for the necessary expenses of both spouses, while the wife would not be liable for either. In perpetuating additional benefits for a wife when the benefits may not be needed, the rule runs afoul of the equal protection clause. *Orr, supra,* 440 U.S. at 282–283, 99 S. Ct. at 1113, 59 L. Ed2d at 321.

"We recognize that in many instances the present rule correctly operates to favor a needy wife. Even wives who have entered the work force generally earn substantially less than their husbands. . . . However, that is an insufficient reason to retain a gender based classification that denigrates the efforts of women who contribute to the finances of their families and denies equal protection to husbands. *Weinberger v. Weisenfeld, supra,* 420 U.S. at 645, 95 S. Ct. at 1232, 43 L. Ed.2d at 523.

"Although the New Jersey Constitution does not contain an equal protection clause, the same result follows as under the United States Constitution. The relevant section of the New Jersey Constitution provides 'All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.' Art. 1, sec. 1, par. 1. In interpreting that section, this Court stated that it provides comparable or superior protection against unequal protection of the law. *Peper v. Princeton University Board of Trustees,* 77 N.J. 55, 79 (1978) (discrimination on the basis of gender in private employment may deny equal protection of the laws under Art. 1, sec. 1, par. 1 of the New Jersey Constitution). For reasons previously set forth, we conclude that the rule concerning necessaries with its inherent discrimination against husbands constitutes a denial of equal protection of the laws under the New Jersey Constitution." *Jersey Shore Medical Center-Fitkin Hospital v. Estate of Sidney Baum,* 84 N.J. 137, 417 A.2d 1003, 1008–1009 (1980).

I believe the reasoning of the New Jersey Supreme Court is applicable to the rule adopted by the majority.

For the reasons I have set forth, I concur in the disposition of the case but not in the rule adopted by the court imposing primary liability for necessaries on the husband.[4]

---

[4] *In Matter of Estate of Stromsted,* 99 Wis.2d 136, 299 N.W.2d 226 (1980), the court imposes secondary liability for necessaries on the wife.