MARSHFIELD CLINIC, Plaintiff-Appellant,

v.

Agnes DISCHER, Defendant-Respondent.

Supreme Court

*No. 81–214. Argued November 30, 1981.—*
*Decided January 18, 1982.*

(Also reported in 314 N.W.2d 326.)

For the appellant there were briefs by *James P. Schermetzler, Associated Attorneys, S.C.,* of Marshfield, and oral argument by *Paul A. Croake,* of Madison.

For the respondent there was a brief by *James J. Bolgert* and *Glinski, Haferman, Ilten, Mills & Dreier, S.C.,* of Stevens Point, and oral argument by *Mr. Bolgert.*

BEILFUSS, C.J.    This is an appeal from a judgment dismissing the complaint of the plaintiff by the circuit court.  On December 12, 1980, Circuit Judge James H. Levi dismissed plaintiff's (Marshfield Clinic) complaint on the ground that no cause of action existed to hold a wife liable for the necessary medical expenses of her husband.  The court of appeals certified the appeal to this court pursuant to sec. 809.61, Stats. 1979–80.  We granted certification to consider whether a wife is liable for medical expenses incurred by her deceased husband

on his own behalf in the absence of her agreement to accept responsibility for the expenses.

The record in this case is almost totally devoid of facts because the trial court dismissed the complaint without making any findings. From the limited record, it is clear that the plaintiff provided medical services to Theodore Discher, the defendant's husband, from November 18, 1978 to April 15, 1979, the date of his death. The plaintiff alleged it had not been paid for these services. However, the plaintiff did not allege that any attempts were made to collect from the estate of the husband or that the husband's estate had no assets.

The trial court dismissed this action before it was aware of our recent decisions in *Sharpe Furniture, Inc. v. Buckstaff,* 99 Wis. 2d 114, 299 N.W.2d 219 (1980), and *In Matter of Estate of Stromsted,* 99 Wis. 2d 136, 299 N.W.2d 226 (1980). These cases represent a significant development in the common law necessaries doctrine in this state. In *Sharpe* this court held that the necessaries doctrine remains an important part of the common law today and that a husband may be held liable for necessary items bought by his wife on credit. The issue in *Stromsted* involved the related question of whether a wife may also be liable for necessaries furnished to her in the absence of any express contract. We held in *Stromsted* that a wife may be held liable for the family's necessaries along with the husband, but that the husband was primarily liable while the wife was secondarily liable. The present case deals with a situation where the necessary services were rendered to the husband and the creditor seeks to collect from the wife.

Our holding in *Stromsted* makes it clear that a wife shares with her husband a limited legal duty of support of the family. *Stromsted, supra,* 99 Wis. 2d at 143. This includes liability for necessary medical expenses in-

curred by either spouse. Although the husband is primarily liable "[t]o the extent that the husband is unable to satisfy his obligation in this regard, the creditor may seek satisfaction from the wife." *Stromsted, supra,* 99 Wis. 2d at 145. If the plaintiff in this case had proven that it had attempted to collect from Mr. Discher's estate, but had been unable to do so, Mrs. Discher would be liable. However no such showing was made or even attempted. Therefore, we remand to give the plaintiff an opportunity to prove that it either attempted to collect from Mr. Discher's estate but was unable to do so, or that any collection attempts would have been futile. If the plaintiff is able to make such a showing then it will be able to proceed against Mrs. Discher under the *Stromsted* rule. But we re-emphasize that the *Stromsted* rule only applies in the absence of an express agreement by the parties.[1] If it appears on remand that the clinic had expressly agreed to look only to the husband for payment of his medical expenses, then Mrs. Discher cannot be liable.

The argument has been raised in this case that the *Stromsted* rule is unconstitutional because it discriminates on the basis of gender and therefore violates equal protection. This issue was not raised in *Stromsted* and we declined to address any potential constitutional claims. *Stromsted, supra,* 99 Wis. 2d at 140, n. 3. We now hold that the rule does satisfy the test set forth in recent United States Supreme Court decisions dealing with gender based classifications.

To satisfy a constitutional challenge, a gender based rule must serve important governmental objectives and

[1] Because of the limited facts available in the record, we do not express an opinion as to whether an implied agreement, if any, can be construed as an express contract in this case.

the means employed must be substantially related to the achievement of those objectives.[2]

In considering the necessaries rule, as articulated in *Sharpe* and *Stromsted*, it is apparent that it serves several important governmental objectives. The rule benefits families by making it more likely that they will obtain necessary and appropriate goods and services. It enables wives to obtain credit more easily, rather than having to depend on their husbands to make necessary purchases. It also protects wives from economic hardship by placing primary liability on husbands. This is significant because, as discussed below, wives have made substantial economic gains in the past decade, but substantial economic disparities still persist between husbands and wives. The rule also benefits the providers of goods and services by assuring them greater certainty of payment when they extend credit to families.

The rule set forth in *Sharpe* and *Stromsted* is substantially related to the achievement of these goals. As we said in *Sharpe*:

"We are of the opinion that the doctrine of necessaries serves a legitimate and proper purpose in our system of common law. The heart of this common law rule is a concern for the support and the sustenance of the family and the individual members thereof. The sustenance of the family unit is accorded a high order of importance in the scheme of Wisconsin law. It has been codified as a part of our statutes, *see e.g.*, sec. 767.08, Stats., and it has been recognized as a part of our case law. *See Zachman v. Zachman*, 9 Wis. 2d 335, 338, 101 N.W.2d 55 (1960). The necessaries rule encourages the extension of credit to those who in an individual capacity may not

[2] *Wengler v. Druggists Mutual Ins. Co.*, 446 U.S. 142, 150 (1980); *Califano v. Westcott*, 443 U.S. 76, 85 (1979); *Orr v. Orr*, 440 U.S. 268, 279 (1979); *Califano v. Webster*, 430 U.S. 313, 316–17 (1977); *Craig v. Boren*, 429 U.S. 190, 197 (1976).

have the ability to make these basic purchases. In this manner it facilitates the support of the family unit and its function is in harmony with the purposes behind the support laws of this state. The rule retains a viable role in modern society." 99 Wis. 2d at 119.

The rule benefits both the family members and the providers of goods and services. This is especially true in cases dealing with medical care. A patient may need immediate care in an emergency and the hospital must act without delay. In many cases a patient may be injured or otherwise be physically or mentally unable to agree to pay when entering the hospital. The hospital can be fortified by knowing that it can rely on either spouse to pay for medical expenses. This will allow a hospital to render immediate care without being encumbered by having to make financial arrangements at that time.

While the necessaries doctrine remains important in modern society, it is clear from *Stromsted, supra,* 99 Wis. 2d 136, that the old common law rule, whereby the husband was solely responsible for his family's necessities, is out of touch with the changing role of women. Thus, *Stromsted* held that wives share with their husbands the legal duty of support of the family. *Stromsted, supra,* 99 Wis. 2d at 143. But it is also inappropriate to impose this obligation in the form of joint and several liability on the husband and the wife. Although many more married women are now working than were in the past, they still contribute less to the typical family income than do their husbands. The most recent statistics, contained in the *Monthly Labor Review* for October, 1981, showed that the number of married women (with husbands present) who were working had risen by nearly six million during the 1970's. This was the largest increase in the number of working wives in any decade in United States history. By March, 1980, 24.4 million wives—half of all wives sixteen years and over—were

working or looking for work.[3] Despite these dramatic gains, the average working wife contributed only about one-fourth of the family's income.[4] While this is a substantial part of the total family income, "their average share has not changed in at least two decades."[5] In fact, there is some evidence to show that the contribution of working wives to total family income has remained rather constant over an even longer period of time. A study of working wives in Manchester, New Hampshire in 1920 showed that they earned only about one-fourth of their families' income. This is the same proportion as indicated by the current studies throughout the United States in the late 1970's.[6]

The relatively constant overall contribution by working wives to their families' income seems partly attributable to the wide gap between average male and female earnings. Through 1978, women who worked full time earned only about 60 percent as much as men.[7] Women are still concentrated in low paying jobs. A study on changing marital characteristics of workers during the 1970's indicates that "[d]espite slight increases in the proportion of wives in higher paying professional-technical and managerial jobs, about 3 of 4 working wives were employed in lower paying clerical, service, operative, and retail sales jobs in March 1978—about the same proportion as 8 years earlier."[8]

Equally as important for our purposes is the fact that many wives still do not work outside the home at all and

[3] "Marital and family patterns of the labor force," *Monthly Labor Review*, October 1981, p. 36.

[4] "Changes in marital and family characteristics of workers, 1970–1978," *Monthly Labor Review*, April 1979, p. 50.

[5] *Ibid.*

[6] "Working wives' contribution to family income in 1977," *Monthly Labor Review*, October 1979, pp. 62–63.

[7] "Occupational segregation and earnings differences by sex," *Monthly Labor Review*, January 1981, p. 49.

[8] See fn. 4, p. 50.

many others work only part time. If approximately half of all married women work, then obviously half do not work outside the home. Further, a recent study reveals that "[a]bout two thirds of the wives in multiearner families worked 40 weeks or more during the year, mostly full time."[9] This indicates that roughly one-third of those wives that did work only worked part time.

Taken as a whole, these figures show that, while many more wives are working in income producing jobs than ever before, the husband is still the dominant income source in the vast majority of families. Despite major increases in the number of working wives, approximately one-half of the wives do not work outside the home. Of those that do, about one-third only work part time. Working women still make far less than men do, on the average. Working wives typically contribute no more to the total family income now than they did two decades ago. In light of these facts we consider the *Stromsted* rule to be the most appropriate way to apportion responsibility for the family's necessaries. A rule imposing joint and several liability on both parties, such as was adopted in *Cooke v. Adams,* 183 So. 2d 925 (Miss. 1966), seems very unfair if applied to the facts of this case. Similarly, the rule adopted by the New Jersey Supreme Court in *Jersey Shore, Etc., v. Estate of Baum,* 84 N.J. 137, 417 A.2d 1003 (1980), seems to impose too great a burden on the wife. In that case the court held that in the absence of an agreement to the contrary, the income and property of one spouse should not be exposed to satisfy debts incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient. Such a rule is preferable to joint and several liability, but it may still burden a wife by forcing her to exhaust all her assets before liability may be imposed upon the husband for a necessary expenditure incurred by her. If

[9] See fn. 3, p. 37.

her assets are much less than her husband's, as seems typical, then the New Jersey rule would unfairly burden his wife.

The suggestion has also been made that such cases should be decided on a case-by-case basis, imposing liability on whichever spouse has greater resources. This method would be truly gender neutral and would not face any constitutional challenges. But a case-by-case method would cause more problems than it would solve in this area. Such a rule would destroy any certainty on the part of providers of goods and services. How is the seller of goods to know which spouse possesses the greatest financial resources in any individual situation?

The *Stromsted* rule lets a creditor know how to proceed in collecting for necessary expenses incurred by either spouse. The creditor does not have to delve into a family's financial background in order to ascertain from which spouse it can collect. Under *Stromsted* it is clear that both spouses are liable, but that a creditor must initially proceed against the husband. Such a fixed rule is essential in the commercial world.

We do not view this rule as one which "denigrates the efforts of women who contribute to the finances of their families."[10] Nor do we feel that it is paternalistic or based on an "archaic and overbroad generalization." *Schlesinger v. Ballard*, 419 U.S. 498, 508 (1975). Rather, we feel that this rule accurately reflects the position of married women in contemporary society. The old common law rule that only the husband was liable for his family's necessaries is certainly not suited to today's societal and constitutional requirements. Yet it is also true that, despite great progress, married women still lag far behind their husbands in earning power. This

---

[10] *Jersey Shore, Etc., v. Estate of Baum,* 84 N.J. 137, 417 A.2d 1003 (1980), citing *Weinberger v. Wiesenfeld,* 420 U.S. 637, 645 (1975).

may be due to any number of reasons, such as: discrimination that still exists in the job market; a socialized tendency for women to choose lower paying jobs; the fact that many married women still do not work outside the home, or at least work only part time. For the purposes of this case, these reasons are irrelevant. What is relevant is the verifiable fact that wives are still far from equal with their husbands in economic resources. Because of this inequality the *Stromsted* rule imposes primary liability upon husbands.

The United States Supreme Court has not upheld classifications based on gender when the classifications ". . . 'command[s] "dissimilar treatment for men and women who are . . . similarly situated," . . . .' " *Schlesinger v. Ballard*, 419 U.S. 498, 506 (1975). But when the classification reflects the demonstrable fact that men and women are not similarly situated in a certain respect, then the classification has been upheld. *Schlesinger* at 508. This was the case in *Schlesinger* where a statute treated male Navy officers differently from female officers in regard to promotions, allowing women officers a longer period of service than male officers before they would face mandatory discharge for failure to be promoted. The statute was upheld on the ground that male and female officers were not similarly situated because male officers had more opportunities to become promoted by serving in combat, which was not as readily available to female officers.

In *Kahn v. Shevin*, 416 U.S. 351 (1974), a Florida statute which granted a $500 property tax exemption to widows, but not to widowers, was upheld. Writing for the court, Judge DOUGLAS stated at pp. 353–54:

"There can be no dispute that the financial difficulties confronting the lone woman in Florida or in any other State exceed those facing the man. Whether from overt discrimination or from the socialization process of a

male-dominated culture, the job market is inhospitable to the woman seeking any but the lowest paid jobs. There are, of course, efforts under way to remedy this situation. On the federal level, Title VII of the Civil Rights Act of 1964 prohibits covered employers and labor unions from discrimination on the basis of sex, 78 Stat. 253, 42 U.S.C. secs. 2000e–2(a), (c), as does the Equal Pay Act of 1963, 77 Stat. 56, 29 U.S.C. sec. 206(d). But firmly entrenched practices are resistant to such pressures, and, indeed, data compiled by the Women's Bureau of the United States Department of Labor show that in 1972 a woman working full time had a median income which was only 57.9 % of the median for males—a figure actually six points lower than had been achieved in 1955. Other data point in the same direction. The disparity is likely to be exacerbated for the widow. While the widower can usually continue in the occupation which preceded his spouse's death, in many cases the widow will find herself suddenly forced into a job market with which she is unfamiliar, and in which, because of her former economic dependency, she will have fewer skills to offer."

Justice DOUGLAS went on to uphold the statute, despite the gender based discrimination, because ". . . 'the discrimination is founded upon a reasonable distinction, or difference in state policy.' " *Kahn v. Shevin, supra,* 416 U.S. at 354. The *Stromsted* rule is an effort to deal with the same kinds of problems faced by women that Justice DOUGLAS identified in *Kahn.* Given the current economic status of wives, we feel that this rule is the most equitable way to divide the liability between husband and wife for the family's necessary expenses. It is important that the necessaries doctrine is a common law rule which has the ability to change over time to accord with changing societal needs and expectations. In the future it may be that wives will achieve greater equality with their husbands in terms of their relative financial strength. If that occurs then this rule may need to be modified, but for the present it is well suited to the relative economic status of the typical husband and wife.

*By the Court.*—Reversed and remanded to the circuit court for further proceedings not inconsistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*concurring in part and dissenting in part*). I join the court to recognize, as the majority and I did in *Sharpe*[1] and *Stromsted*,[2] that the common law doctrine of necessaries must be modified so that women as well as men are liable for necessaries furnished the family unit. I also join the court in remanding the case at bar to the circuit court.

I dissent from those parts of the majority opinion which extend the gender based *Stromsted* rule to the fact situation presented in this case, namely to the furnishing of necessaries to husbands. I have previously dissented to the use of the gender based rule in the fact situation presented by *Stromsted,* namely the furnishing of necessaries to wives. *Stromsted,* 99 Wis. 2d at 148 (Abrahamson, J., dissenting).

## I.

Under the common law doctrine of support and the corollary doctrine of necessaries, the husband had the duty to support himself and his wife and was held liable to the creditor for necessaries furnished him or his wife; the wife had no duty to support and was not liable to the creditor for necessaries furnished her or her husband. In *Sharpe* this court continued the common law doctrine of necessaries and held the husband liable for necessaries supplied to his full-time homemaker wife who had no income or assets. In *Stromsted* the court reaffirmed the

---

[1] *Sharpe Furniture, Inc. v. Buckstaff,* 99 Wis. 2d 114, 299 N.W.2d 219 (1980).

[2] *In Matter of Estate of Stromsted,* 99 Wis.2d 136, 299 N.W.2d 226 (1980).

husband's common law liability to the creditor for necessaries supplied to the wife but extended the common law doctrine of payment for necessaries supplied to the wife by making the wife liable, albeit secondarily, for necessaries supplied to her.

This case presents a significantly different fact situation than *Stromsted* and *Sharpe*. In this case the alleged necessaries—medical care—were furnished to the husband, not to the wife. At common law since the husband alone was liable for support of the family unit, the husband alone was liable for payment of the necessaries furnished the family unit; the wife was not liable for payment. The majority renders the common-law doctrine of necessaries gender neutral and holds that hereafter the doctrine of necessaries in Wisconsin shall apply to both spouses: A husband and wife are liable to creditors for necessaries supplied to the wife; a husband and wife are liable to creditors for necessaries supplied to the husband.[3]

I agree that the doctrine of necessaries, if it is to continue, must be modified to make both husband and wife liable for necessaries supplied to the family unit, whether supplied to the husband, to the wife or to the children. At common law the doctrine of necessaries was one of several remedies to aid enforcement of the husband's common law duty to support the wife. In Wisconsin the legislature has provided that each spouse has a mutual duty to support based on economic and other criteria. Secs. 52.01, 52.055, and 767.08, Stats. 1979–80. Consequently the doctrine of necessaries in this state must be adapted to be a remedy to aid enforcement of the husband's and wife's mutual duty of support. The doctrine must be adapted to comport with the Wisconsin statutes

---

[3] Marshfield Clinic's brief argues that the common law necessaries rule violates the equal protection guarantees of the federal constitution.

recognizing the equal rights and responsibilities of both marital partners, with the changes in the economic and social conditions of society, and with the state and federal constitutional principles of equal protection.[4]

The majority opinion appears to superimpose the elements of the common law rule of necessaries *in toto* to the furnishing of goods and services to the husband. For the elements of the Wisconsin doctrine of necessaries, see *Simpson Garment Company v. Schultz*, 182 Wis. 506, 509–10, 196 N.W. 783 (1924), quoted at *Sharpe*, 99 Wis. 2d at 122. Thus, unless the majority opinion is to be read as converting every purchase of goods and services by a husband or a wife into a necessary, on remand the circuit court must first determine whether the goods and services supplied the husband are necessaries. When the goods or services are furnished to the wife, in order to determine whether they are necessaries the court looks to the family's circumstances and the husband's "financial ability to pay for them." When goods or services are furnished to the husband, does the court look to the wife's financial ability to pay to determine whether the goods are necessaries? The definition of what is a necessary has to be rethought.

The definition of express agreement and implied-in-fact agreement must also be rethought to make it applicable to the present day legal position of men and women and to the extended doctrine of necessaries. The law of express and implied-in-fact contract should be gender

---

[4] *See Condore v. Prince George's County*, 289 Md. 516, 425 A.2d 1011, 1019 (1981), in which the court concluded that it was for the legislature not the court to expand the common law doctrine to apply to the wife. Until the legislature acted, the court concluded that the doctrine of necessaries "is no longer part of the common law of this State and that neither the husband nor the wife is liable, absent a contract, express or implied, for necessaries such as medical care supplied to the other."

neutral. See *supra,* page 509 and note 1; *Sharpe,* 99 Wis. 2d at 123, n. 1; *Stromsted,* 99 Wis. 2d at 139, n. 1, 141–143, n. 5, 146, n. 9, and Abrahamson, J. dissenting, 147, n. 1. If the husband promised in writing to pay the hospital for medical care, this is an express agreement which, under the *Stromsted* rule, should relieve the wife of all liability for payment of the medical care. *Jewell v. Schmidt,* 1 Wis. 2d 241, 250, 83 N.W.2d 487 (1957) ; *Fischer v. Fischer,* 31 Wis. 2d 293, 309, 142 N.W.2d 857 (1966) ; *Seitz v. Seitz,* 35 Wis. 2d 282, 295–97, 151 N.W. 2d 86 (1967).[5] Suppose in addition to the husband hav-

---

[5] Mrs. Discher's brief argues that regardless of the extension of the application of the doctrine of necessaries to necessaries supplied men, the hospital cannot recover from the wife because the husband expressly contracted to pay for the services. The brief states:

"The Supreme Court of the State of Wisconsin has not and should not impose liability on a wife on equitable principles where the husband has expressly contracted to pay personally for those services. If a man enters a hospital and signs a consent to treatment form, he is bound by an express contract to pay; that is, a court would find an implied-in-fact contract. Restatement (2nd) of *Contracts,* Tentative Draft No. 1, (1964), Sec. 5., Illus. 1. *See also Estate of Stromsted* at 147 n. 1, 299 N.W. 2d. at 231 n. 1 (Abrahamson, dissenting). A contract implied in fact is an expressed contract. *Stromsted, supra* at 146 n. 9, 299 N.W.2d at 231 n. 9.

"The Supreme Court has never held a wife as secondarily liable for medical expenses contracted by and provided to the husband and has implied to the contrary. In *Sharpe,* the court held that a husband incurs a primary obligation for necessaries 'in the absence of an expressed contract to the contrary.' *Sharpe, supra* at 120, 299 N.W.2d at 222. The implication articulated by Justice Abrahamson in footnote 1 of her concurrence is that if one spouse expressly promises to pay for an item, the other is not liable to the creditor.

"This was the rule under the old necessaries doctrine. The Supreme Court held in *Jewell v. Schmidt,* 1 Wis. 2d 241, 250, 83 N.W.2d 487, 492 (1957), that a husband is responsible for medical expenses rendered his wife only in the absence of a contract

ing agreed to pay, the hospital form requested information about the wife's assets and income. Does the majority intend that the circuit court determine whether the hospital expressly agreed to look *only* to the husband for payment?[6] The majority states that "If it appears on remand that the clinic had expressly agreed to look *only* to the husband for payment of his medical expenses, then Mrs. Discher cannot be liable." (Emphasis supplied.) *supra,* p. 509. Whether the husband agreed to pay and whether the hospital agreed to look *only* to the husband for payment are two different ideas and two different tests.

My point is simply that the elements of a modern doctrine of necessaries cannot be taken wholesale from the

---

for the medical services by the married woman in her own right." *Marshfield,* Court of Appeals Brief of Respondent, at 2–3.

Marshfield Clinic's reply brief responds to this argument as to express contract as follows:

"[Mrs. Discher] argues that [her] husband and the [Marshfield Clinic] had an implied contract in fact with respect to the payment of the medical expenses. [Mrs. Discher] further argues that this implied contract in fact is the same as an expressed contract, and further that this expressed contract prevents payment from [Mrs. Discher]. To accept this argument, when coupled with the fact that [her] husband did not have a probate estate, but rather held all property jointly with [his wife], is to deny [Marshfield Clinic] any legal recourse as to the payment of these medical expenses. To accept this argument is to allow all married male individuals to avoid liability for expenses of last illness to their estate by the use of joint tenancy. Likewise, to accept this argument is to deny the same avoidance of last illness expense in the situation of a married female whose surviving husband would have a liability for the expenses that the surviving wife would not. Therefore, to accept this argument is to deny equal protection of the law, in violation of the Fourteenth Amendment of the United States Constitution." *Marshfield,* Court of Appeals Reply Brief of Appellant, at 2–3.

[6] Neither I nor the majority has considered the relation, if any, of the federal or state equal credit opportunity provisions to the majority rule.

common law doctrine. Nor can the elements of the modern doctrine be formulated in a factual vacuum. And this case, as the majority states, is "almost totally devoid of facts." *Supra,* p. 508.

I would remand the matter to the circuit court. I would direct the circuit court that the common law rule governing liability for necessaries is no longer applicable only to necessaries furnished the wife; the doctrine of necessaries like the doctrine of support is applicable to both spouses. On remand the circuit court should consider the contractual relation between the husband, the wife and the hospital; the nature of the goods and services provided the husband; the financial and other circumstances of the husband and the wife; and the duty of the husband and wife to support each other. When the facts are known, the circuit court can determine the liability of the husband's estate and the liability of the wife. The result in the case at bar may be plain, once the facts are known. *Sharpe,* 99 Wis. 2d at 123 (Abrahamson concurring) ; *Stromsted,* 99 Wis. 2d at 148 (Abrahamson dissenting).

## II.

After the majority determines that the necessaries doctrine should apply to goods provided to a husband as well as to a wife, the court goes on to determine how the husband and wife should share payment for necessaries when there is no express contract that the husband will pay for the necessaries. This question could be left open pending a determination of the facts, but it is not. *Cf. Manatee Convalescent Center, Inc. v. McDonald,* 392 So. 2d 1356, 1359, n. 1 (Fla. Ct. App. 1980). The majority applies the gender based *Stromsted* rule and says the husband is always primarily liable for necessaries sup-

plied to him and the wife is always secondarily liable.[7] Such a gender based rule expressly discriminates against men. That the classification expressly discriminates against men rather than women does not protect it from scrutiny under the federal or state constitutional guarantees of equal protection. *Orr v. Orr*, 440 U.S. 268, 279 (1979).

The majority tests its gender based classification to determine if it violates the equal protection guarantees of the Wisconsin and federal constitutions by using the traditional rationality test with a somewhat "sharper focus," *Michael M. v. Superior Ct. of Sonoma County*, 450 U.S. 464, 468 (1981) : Does the gender based classification serve an important governmental interest and is the classification substantially related to the achievement of that interest. *Kirchberg v. Feenstra*, 450 U.S. 455, 459 (1981).[8]

---

[7] I am concerned that the majority opinions in *Stromsted, Sharpe*, and now *Marshfield Clinic* not be misconstrued to mean that for purposes other than necessaries the duty to support is primarily on the husband and secondarily on the wife, regardless of the income or assets of the husband and wife. This is a plausible, but I believe, unintended reading .of the majority opinion and a reading which is contrary to secs. 52.055, 767.08, 767.25, 767.26, Stats. 1979–80. I do recognize that the majority opinion seems to support this reading when it says "our holding in *Stromsted* makes it clear that a wife shares with her husband a *limited* legal duty of support of the family." (Emphasis added.) *Supra*, p. 508. But *Stromsted, Sharpe*, and *Marshfield Clinic* relate only to sharing payment for necessaries. These cases do not establish a general rule relating to the spouses' obligations of support.

[8] I assume the majority, by using this test, is *sub silentio* disavowing the use of the rational basis test for gender based classifications. *See Warshafsky v. The Journal Co.*, 63 Wis. 2d 130, 216 N.W.2d 197 (1974). This court is not alone in having difficulty deciding on the proper test. The United States Supreme Court has explicitly conceded it "has had some difficulty in agreeing upon the proper approach and analysis in cases involv-

Although the majority sets forth several purposes for its gender based rule,[9] the "important government objective" is clearly to help needy spouses. Protecting needy spouses is the objective of the marital duty of support and the doctrine of necessaries was developed to aid enforcement of that objective. The United States Supreme Court has consistently recognized that protecting needy spouses is an important governmental objective. *Wengler v. Druggists Mutual Ins. Co.,* 446 U.S. 142, 151 (1980) ; *Orr v. Orr,* 440 U.S. 268, 280 (1979).

That the gender based rule serves an important governmental objective is not sufficient, however; the rule must also be substantially related to that objective. Although I recognize, as has the United States Supreme Court, that "the question whether a statute is *substantially* related to its asserted goals is at best an opaque one," *Michael M. v. Sonoma County Superior Court,* 450 U.S. 464, 474, n. 10 (1981), I conclude that the majority has

ing challenges to gender-based classifications." *Michael M. v. Superior Ct. of Sonoma County,* 450 U.S. 464, 468 (1981).

I would hold that gender-based classifications are "inherently suspect" for state constitutional purposes and would apply the "strict scrutiny" test. Nevertheless, for purposes of this opinion, I apply the less rigorous test used by the majority and conclude the rule adopted by this court is unconstitutional.

[9] The majority opinion, *supra* at p. 510, says: "In considering the necessaries rule, as articulated in *Sharpe* and *Stromsted,* it is apparent that it serves several important governmental objectives. The rule benefits families by making it more likely that they will obtain necessary and appropriate goods and services. It enables wives to obtain credit more easily, rather than having to depend on their husbands to make necessary purchases. It also protects wives from economic hardship by placing primary liability on husbands. This is significant because as discussed below, wives have made substantial economic gains in the past decade, but substantial economic disparities still persist between husbands and wives. The rule also benefits the providers of goods and services by assuring them greater certainty of payment when they extend credit to families."

not sustained the burden that it has imposed upon itself by adopting a gender based rule, namely that the rule is substantially related to the important governmental objective of protecting the needy spouse, *i.e.* that a gender based rule for payment of necessaries is more effective than a gender neutral rule.

The majority bases its gender based rule of primary liability on the husband and secondary liability on the wife on the fact that "[a]lthough many more married women are now working than were in the past, they still contribute less to the typical family income than do their husbands." *Supra,* at 511. The majority thus uses statistics to support its conclusion that gender can be used as a proxy for determining who is the needy spouse. Because the court's rule rests on empirical data that show women are more likely to be financially dependent on their husbands than vice versa the rule is not totally irrational. But the United States Supreme Court has held in numerous cases that statistical data—like the data upon which the majority relies—does not necessarily constitute adequate justification for a discriminatory rule. *Wengler v. Druggists Mutual Ins. Co.,* 446 U.S. 142, 151 (1980); *Craig v. Boren,* 429 U.S. 190, 202, n. 13 (1976).

The majority's major justification for use of the gender based rule over the gender neutral rule is that of administrative convenience. In the majority's view, administrative concerns render the gender neutral rule a less effective means of achieving the governmental objective of helping needy spouses, because under a gender based rule, there need be no individualized hearings on the comparative obligation of the spouses to support each other. Moreover, the majority maintains that the rule benefits creditors because the creditors always know how to proceed to collect for the necessaries without the need "to delve into a family's financial background in order to ascertain from which spouse it can collect." *Supra* p. 514.

Without this certainty, says the majority, creditors will be less likely to extend credit and thus the purpose of the necessaries doctrine will be defeated.

The United States Supreme Court has not been favorably disposed to classifications made "for the sole purpose of achieving administrative convenience." *Frontiero v. Richardson*, 411 U.S. 677, 690–91 (1973). The case at bar is substantially similar to that of *Wengler v. Druggists Mutual Ins. Co., supra*, in which the United States Supreme Court invalidated a Missouri workers compensation law which provided that where a worker is killed in a job-related accident, if the surviving spouse is the wife, she automatically receives benefits, but where the surviving spouse is the husband, he can only receive benefits if he is mentally or physically incapacitated or can prove actual dependence on the deceased wife. The rule in the case at bar is even more discriminatory against men because it does not even provide husbands with an opportunity to avoid primary liability by proving actual dependence. In *Wengler* the Missouri Supreme Court upheld the statute on the basis that, " 'the substantive difference in the economic standing of working men and women justifies the advantage [the law] administratively gives to a widow.' 583 S.W.2d 162, 168 (1979)." *Wengler*, 446 U.S. at 146. The United States Supreme Court rejected the argument and said that the mere allegation of administrative inconvenience is not sufficient to justify the gender classification, a real showing had to be made. *Wengler*, 446 U.S. at 152.

Even more on point is *Orr v. Orr, supra*, where the United States Supreme Court struck down the Alabama alimony statute that provided alimony for wives but not husbands. The Alabama statute was based, as is the majority rule in the case at bar, on the generalization that the family's primary support is derived from the

husband's earnings. The gender classification in *Orr* was used, as is the majority's, as a proxy for determining need. The Court held that because divorce proceedings already involve individualized hearings at which the relative financial resources of the spouses may be considered, empirical data cannot be used as a proxy for actual need.

"There is no reason, therefore, to use sex as a proxy for need. Needy males could be helped along with needy females with little if any additional burden on the State. In such circumstances, not even an administrative convenience rationale exists to justify operating by generalization or proxy." *Orr,* 440 U.S. at 281.

In the case before us, as in *Orr,* an individualized hearing cannot be avoided by the gender based classification. A court hearing is required to determine whether the goods furnished were necessaries, whether the purchaser of the goods did or did not expressly agree to pay for the goods, and if the wife is being sued whether the creditor is able to collect from the husband. The first issue, whether the goods are necessaries, involves an investigation of the financial situation of the family. Thus I do not find the majority's administrative convenience justification persuasive. *Orr v. Orr,* 440 U.S. 268, 281 (1979).

The majority's assertion that the gender based rule provides certainty for creditors is also unpersuasive. The doctrine of necessaries, whether or not there is a gender based rule for payment, does not provide certainty for creditors. Traditionally, the doctrine of necessaries has been viewed as an ineffective tool to enforce support because the creditor is uncertain of proving the goods are necessaries or the existence of an express agreement. The majority's gender based rule does nothing to reduce the creditor's uncertainty; a gender neutral rule would

not increase the creditor's uncertainty. Under a gender neutral rule the creditor could sue both spouses; the court would determine each spouse's liability and for what share. Accordingly, I do not think that the majority's concern for certainty justifies the gender based classification.

I conclude that neither the concern for administrative convenience nor the concern for certainty for the creditor justifies the use of a gender based rule rather than a gender neutral rule and that therefore the gender based rule is not substantially related to achieving the purposes of the rule.

I further conclude that the gender based rule causes perverse results. The gender based rule does not achieve the purpose of helping needy spouses. In operation the gender based rule discriminates against men even if they are the needy spouses, disfavors the needy wife homemaker and favors the financially independent wife. When a gender based rule "generates additional benefits only for those it has no reason to prefer it cannot survive equal protection scrutiny." *Orr v. Orr,* 440 U.S. at 283. To illustrate my point about perverse results, let me classify marriages into five categories:

(1) Marriages in which the wife is a full-time homemaker; the husband works outside the home; the wife is dependent for support on the husband's earnings.

(2) Marriages in which the wife and husband work outside the home; the husband is the primary wage earner; the wife is, to some extent, dependent for support on the husband's earnings.

(3) Marriages in which the wife and husband work outside the home, and earn approximately equal amounts; neither is dependent for support on the other.

(4) Marriages in which the wife and husband work outside the home; the husband is the secondary wage

earner; the husband is, to some extent, dependent for support on the wife's earnings.

(5) Marriages in which the husband is a full-time homemaker; the wife works outside the home; the husband is dependent for support on the wife's earnings.

In marriages 1 and 2, in which the majority's statistics show the large number of families falls,[10] the majority's gender based rule which imposes liability on the wife, albeit secondary liability, disfavors the needy woman. The majority rule imposes liability on the needy wife when in many instance no liability should be imposed at all. Under the common law rule of support and necessaries the wife would have no liability for necessaries furnished her or her husband. Under the Wisconsin statutes, the wife would have no or very limited liability for support during the marriage. Under a gender neutral rule for payment of necessaries, liability for payment of necessaries in marriages 1 and 2 would be imposed solely or substantially on the husband, not on the basis of gender, but on the basis of his duty to support flowing from his economic ability to support; no liability for necessaries would be imposed on the wife. Thus the majority rule disfavors the needy wife in marriages 1 and 2. Subjecting the homemaker wife to liability, even secondary liability, for necessaries supplied to her husband is not

[10] In 1978, in approximately 15 percent of the families in which the wife worked (husband present) and the combined family income was less than $25,000, the wife's earnings equaled or exceeded the earnings of the other members of the family. Telephone interview with Stephen J. Tordella, Applied Population Laboratory, University of Wisconsin Extension (Jan. 15, 1982). *See* U.S. Bureau of Labor Statistics, Special Labor Force Report No. 237, *Marital and Family Characteristics of the Labor Force, 1979,* U.S.G.P.O., Wash., D.C.; Sweet, *Recent Trends in the Employment of American Women,* in Women in the Professions 25 (L.K. Epstein ed. 1975).

only contrary to the theory of the doctrine of necessaries (*i.e.,* that liability for necessaries follows liability for support) but also violates secs. 766.03, 766.05, and 766.06, Stats. 1979–80, which expressly state that the wife's assets shall not be subject to the disposal of her husband and shall not be liable for his debts. See *Stromsted, supra,* 99 Wis. 2d at 149.

In marriage 3, the majority's gender based rule imposing primary liability for payment of necessaries on the male disfavors the male and favors the financially able female.

In marriages 4 and 5, the majority's gender based rule which imposes primary liability on the male, disfavors the male—the needy male at that—and favors the financially able female.

To the extent that a gender based rule operates differently than a gender neutral rule, it hurts needy wives (marriages 1 and 2), helps wives who do not need the help (marriages 3, 4 and 5), and hurts husbands who may in fact be the needy spouse (marriages 4 and 5).

When the gender based rule disfavors those whom the rule is supposed to protect, I conclude the gender based rule cannot be said to be substantially related to the legitimate governmental objective of helping needy wives or needy spouses.

## III.

I recognize that in the real world, the female homemaker may escape liability because a creditor may tire and give up the fight after suing the husband. But this turn of events should not make the homemaker thankful for being secondarily liable. The court should not be imposing any liability on her at all. The majority requires the homemaker to share in the family's liabilities

but the majority does not give the homemaker any share in the family's income or assets. *Cf. Rasmussen v. Oshkosh Savings & Loan Ass'n*, 35 Wis. 2d 605, 611, 151 N.W. 2d 730 (1967). The majority adopts a "partnership family model" for liabilities[11] but not for income or assets.

For the majority to say that its rule benefits women, or benefits the needy spouse, or benefits the homemaker, or compensates for or ameliorates the effects of the existing disparate economic condition of men and women is Orwellian newspeak. In the name of aiding women, needy spouses, and homemakers, the majority imposes, for the first time, a liability on the needy wife, on the homemaker wife, to pay creditors for necessaries supplied the husband.

The majority imposes liability on the woman homemaker, albeit secondary, but does not concern itself with the position the court appears to have adopted in 1967 that the female homemaker has no rights, even secondary, to determine how the earnings of the husband shall be spent. *Cf. Rasmussen v. Oshkosh Savings & Loan Ass'n*, 35 Wis. 2d at 611. See also *Skaar v. Department of Revenue,* 61 Wis. 2d 93, 211 N.W.2d 642 (1973) ; *Stern v. Department of Revenue,* 63 Wis. 2d 506, 217 N.W.2d 326 (1974). *Compare In re Estate of Kersten,* 71 Wis. 2d 757, 239 N.W.2d 86 (1976). Thus, it may be interpreted that if the wife works as homemaker and is entitled to support, the husband's earnings are solely his, subject to his duty to support his family, and the wife has no obligation to pay for her support or her husband's. But if the husband incurs debt in supporting himself or his wife, and then is judgment proof, the homemaker becomes li-

---

[11] The partnership is not, however, an equal one. Rather the husband is senior (primary) partner and the wife is junior (secondary) partner.

able for what the husband was supposed to pay for under the Wisconsin law of support. As I said in *Stromsted*, the majority denies the wife control over the "family income or assets" but makes her liable for family necessaries. The majority has turned the doctrine of necessaries from a remedy to enforce the duty to support into a family expense doctrine and into a creditor's remedy; such a change should be made by the legislature, not the court. *Stromsted*, 99 Wis. 2d at 150, n. 2.

For the reasons I have set forth, I would not decide the instant case until the circuit court determines the relevant facts regarding the contract for services and the financial resources of the decedent and his wife. As I have written previously, this court should not write broadly in an area already fraught with difficulties. I would rely upon a case-by-case determination to develop a means of deciding how the liability for necessaries in a modern household should be shared. As I said before, when the facts are determined, the result may be plain.