DEAN MEDICAL CENTER, S.C., Plaintiff-Respondent,

v.

April CONNERS, Defendant,

Eaamon FIELDS, Defendant-Appellant.

Court of Appeals

*No. 99–2091. Submitted on briefs March 3, 2000.—Decided August 10, 2000.*

## 2000 WI App 202

(Also reported in 618 N.W.2d 194.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael Higgins* of *Higgins Law Office* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David M. McDorman* of *McDorman & Gillen* of Madison.

Before Dykman, P.J., Eich and Roggensack, JJ.

¶ 1. ROGGENSACK, J.[1] Eaamon Fields appeals a judgment against him for medical services provided to his son, C.F., by Dean Medical Center, S.C. He claims that the purchase of medical services was a consumer credit transaction, and therefore Dean can-

---

[1] Normally, small claims appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (1997–98). However, on January 14, 2000, this case was converted to a three-judge panel. All further references to the Wisconsin Statues are to the 1997–98 version, unless otherwise noted.

not recover because it did not give him the personal notice required by the Wisconsin Consumer Act (WCA). Fields also asserts that a paternity judgment in effect when the services were provided precludes Dean from recovering from him for the costs of medical care provided to his child. We conclude that the transaction involved here was not a consumer credit transaction to which the WCA applied. We also conclude that a paternity judgment does not bar a non-party creditor from pursuing either parent for the costs of medical care provided to their child. Accordingly, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 2. The facts are not in dispute. From February 21, 1996, to November 14, 1996, Dean provided uninsured medical services totaling $259.50 to C.F., the minor, non-marital son of April Conners and Eaamon Fields.[2] The paternity judgment required each parent to be responsible for one-half of C.F.'s uninsured medical expenses.

¶ 3. In October of 1998, Dean sued both Conners and Fields in small claims court to recover the cost of services. Dean obtained a default judgment against Conners. Fields disputed his liability and argued that the purchases of medical care were consumer credit transactions and that Dean had violated the WCA by not providing the notice required by WIS. STAT. § 422.305(1). Additionally, he asserted that his responsibility for medical expenses must be established through the family court and in accordance with the paternity judgment, not through a suit against him.

---

[2] Fields had been adjudicated the father of C.F. before the provision of the services at issue here.

¶ 4. The small claims court ruled in favor of Dean, and Fields sought a trial *de novo* in the circuit court. The circuit court concluded that Fields was liable to Dean for the cost of medical care provided to C.F. It determined that the transaction was not a consumer credit transaction; therefore, Dean was not required to comply with the provisions of the WCA. It also ruled that Dean was not barred from suing the non-custodial parent for the full cost of medical services, even though the paternity judgment had provided that each parent was to pay for one-half of the child's uninsured medical care. Fields appeals.

## DISCUSSION

**Standard of Review.**

¶ 5. Whether a particular transaction is a consumer credit transaction subject to the WCA is a mixed question of fact and law. *See LeBakken Rent-To-Own v. Warnell*, 223 Wis. 2d 582, 589, 589 N.W.2d 425, 428 (Ct. App. 1998). Here, the parties do not dispute the material facts. Accordingly, whether those facts fulfill the elements of a consumer credit transaction is a question of law which we review *de novo*. *See id.* Additionally, when the facts are not in dispute, whether a creditor may recover from a non-custodial parent for medical services provided to that parent's child, notwithstanding an earlier paternity judgment that addresses medical care for the child, is a question of law that we review *de novo*. *See Jacobson v. Jacobson*, 177 Wis. 2d 539, 546, 502 N.W.2d 869, 873 (Ct. App. 1993).

**Wisconsin Consumer Act.**

¶ 6. Fields contends that because neither he nor Conners received the notice required by WIS. STAT. § 422.305(1), which provides that no person is obligated to assume liability for payment of a debt arising out of a consumer credit transaction unless that person receives the notice described therein, Dean cannot recover from him for the cost of the medical services provided to C.F. He claims that this language abrogates the common-law rule that requires payment by the parent for necessaries provided to his or her child. However, before § 422.305(1) could be applied, the obligation incurred must be the result of a consumer credit transaction. *See LeBakken,* 223 Wis. 2d at 588, 589 N.W.2d at 428.

¶ 7. A consumer credit transaction is defined as "a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in instalments or for which credit a finance charge is or may be imposed. . . ." WIS. STAT. § 421.301(10). "Payable in instalments" is also defined under the WCA:

> "Payable in instalments" means that payment is required or permitted by agreement to be made in:
>
> (a) Two or more instalments, excluding the down payment in a consumer credit sale, with respect to an obligation arising from a consumer credit transaction for which a finance charge is or may be imposed;
>
> (b) More than 4 instalments, excluding the down payment in a consumer credit sale, in any other consumer credit transaction; or

(c) Two or more instalments if any instalment other than the down payment is more than twice the amount of any other instalment, excluding the down payment.

WIS. STAT. § 421.301(30). "Agreement" is further defined in the WCA as: "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance. . . ." Section 421.301(3).

¶ 8. Neither party argues that WIS. STAT. § 421.301(10) is ambiguous; instead, each argues that the undisputed facts show the absence, or the presence, of an "agreement" of the type envisioned in the statutes. For example, Dean contends that the provision of medical care to C.F. was not a consumer credit transaction because there were no "circumstances" which would show there was an agreement with Conners that payment for the services could be made either in installments or be subject to the imposition of a finance charge. Fields asserts that Dean's practice of regularly allowing customers to pay their bills over time is a "circumstance" showing an agreement that the obligation incurred here was payable in installments and subject to the WCA. The circuit court agreed with Dean, and we do also.

¶ 9. Teresa Addison, the manager of financial services for Dean, was the sole witness who testified about Dean's billing and collection practices. She stated that payment is requested, but not required, at the time medical services are provided. If payment is not made on the date of service, a billing statement is sent to the patient within fifteen days. If Dean has no health insurance information on file, the bill requests payment in full within thirty days. If no payment is

received, a second bill is sent showing a past due balance. If Dean receives no response to that bill, a third statement is sent, and a phone call is made to try and collect the debt. If the debt still is not paid, a fourth bill is sent with a notice that the debt is being referred to a collection agency.

¶ 10. Addison also testified that if a patient responds to any of the billing statements by claiming an inability to pay in full, Dean will permit the debt to be paid over time. Additionally, if the patient is unable to pay the debt because of insufficient income, Dean refers the patient to its Community Care Program to determine whether he or she qualifies for assistance in payment. Addison testified that finance charges are never imposed on any payments made over time.

¶ 11. Addison further testified that at the time services are provided, patients are not informed that they can pay the bill in installments, nor are they informed about payment plans. When payment is not made on the date of service, patients are told that Dean will send them a bill that is due in full within thirty days of receipt. Conners confirmed that portion of Addison's testimony, stating that she believed payment for the medical services was due in full when she received the bill.

¶ 12. No prior case has determined whether an overdue debt which is not subject to a finance charge and is paid over a period of several months is a consumer credit transaction solely because it was paid over time. However, on the record before us, we conclude that the obligation incurred by Conners was not the result of a consumer credit transaction and the WCA does not apply. First, there was no testimony that could support the conclusion that there was an agree-

ment with Conners at the time the services were provided that the bill could be paid in installments. Second, we would have to re-write the agreement under which services had already been provided were we to allow those services to create a consumer debt simply by virtue of nonpayment. To do as Fields asks would force sellers of services to choose between writing off unpaid debts or facing penalties for not having complied with the WCA when they had no intention of offering credit in the first instance. Third, it is Dean's customary business practice not to offer patients the option of paying in installments at the time the services are provided. Only after attempts to collect the full debt have failed may Dean agree to payments over time. This practice was followed here.

¶ 13. Therefore, we conclude that the agreement required by the WCA is one made before services were rendered and that permitting a debtor to pay over time only after attempts at collecting the bill in full have failed does not cause the transaction to become a consumer credit transaction. Accordingly, we conclude that the obligation incurred by Conners for medical care provided to C.F. does not fall under the WCA.

**The Paternity Judgment.**

¶ 14. Fields also argues that third-party creditors may not recover from a non-custodial parent when a paternity judgment establishes the non-custodial parent's liability for medical expenses of the child. He contends that because the paternity judgment in this case directs that he is responsible for one-half of all uninsured medical expenses, Dean is precluded from collecting from him. He argues that Dean can recover the full cost of necessary services only from the custo-

dial parent and then the custodial parent may seek reimbursement from him in family court.

¶ 15. Whether a third-party creditor may obtain a judgment against a non-custodial parent for medical services provided to that parent's child when a paternity judgment assigns liability for those services is a question of first impression in Wisconsin. Fields concedes that the doctrine of necessaries is alive and well in Wisconsin. His sole contention is that a paternity judgment overrides a creditor's rights under the doctrine of necessaries. In support of this theory, he cites to two out-of-state cases in which the courts have held that creditors may not recover directly from non-custodial parents. *See National Account Sys. of Lincoln, Inc. v. Vergith*, 521 N.W.2d 910, 912 (Neb. 1994); *Coastal Adjustment Bureau, Inc. v. Wehner*, 423 P.2d 967, 968 (Or. 1967). Those decisions reason that a court order, such as a divorce decree, fixes the upper limit of liability for a non-custodial parent and that allowing a creditor to seek payment from the non-custodial parent amounts to a modification of the divorce decree without the authority of the family court. Fields adopts that position and also contends that permitting Dean's suit against him will encourage custodial parents to incur debt without restraint. For the reasons stated below, we do not find this reasoning persuasive.

¶ 16. As we begin our analysis of Fields's contentions, we note that Wisconsin courts have consistently held that a person who was not a party to the action, or who did not stand in privity with a party, is not bound by the subsequent judgment. *See, e.g., State v. Jody A.E.*, 171 Wis. 2d 327, 341, 491 N.W.2d 136, 140–41 (Ct. App. 1992); *Maloney v. Vargo*, 267 Wis. 20, 26, 64 N.W.2d 454, 457 (1954). The courts have recognized

that it is unfair to bind non-parties because they have had no opportunity to participate in the proceedings. However, Fields's contention that the paternity judgment prevents Dean from seeking payment from him is an attempt to bind Dean to a judgment when it was not a party to the action. Furthermore, we have been presented with no reason why a divorce judgment should have any greater effect on a non-party than judgments in other civil actions, and our research provided none.

¶ 17. Additionally, a paternity judgment "does not create the support obligation, but rather merely reaffirms it and sets a specific sum to be paid." *State v. Duprey*, 149 Wis. 2d 655, 658–59, 439 N.W.2d 837, 838–39 (Ct. App. 1989). A parent's duty to support his or her child is not a debt but an obligation that arises from that person's status as a parent. The paternity judgment does not alter that status; instead, it assigns, as between two parents, who will pay what amount as expenses accrue. Permitting creditors to seek payment for necessaries from either parent maintains the responsibility of each parent for necessaries for his or her child. *See Madison Gen. Hosp. v. Haack*, 124 Wis. 2d 398, 412, 369 N.W.2d 663, 670 (1985).

¶ 18. Furthermore, if third-party providers of necessaries know they can seek payment from either parent, they will be more likely to provide services to children who need them. *See Marshfield Clinic v. Discher*, 105 Wis. 2d 506, 511, 314 N.W.2d 326, 329 (1982) (stating that the rule of necessaries is particularly appropriate in cases dealing with medical care because it allows hospitals to render emergency care immediately without being encumbered by having to make financial arrangements at that time). Therefore, we

conclude that the paternity judgment does not prevent Dean's suit against Fields.[3]

■

¶ 19. And finally, we do not agree that our decision will undermine the family court's support orders. When either parent refuses to pay for an expense that the other parent believes is covered by the court's order, the parent who believes he or she has paid too much may bring the issue before the family court to seek reimbursement. We also disagree with the assertion that our decision will encourage custodial parents to incur debt without restraint. Because our decision is based in part on the doctrine of necessaries, it applies to items that "supply the personal needs of the infant." *Covault v. Nevitt*, 157 Wis. 113, 116, 146 N.W. 1115, 1117 (1914). Suitable shelter, food, clothing and medical attention are among the necessaries that the law

---

[3] Courts in other jurisdictions have concluded that creditors are not precluded from seeking payment from non-custodial parents by divorce decrees and other family court orders. *See, e.g., University of S. Ala. v. Patterson*, 541 So. 2d 535, 537 (Ala. 1989) (concluding that when medical services to minors are deemed medically necessary, the child has a right to have both parents held responsible); *McLain v. West Side Bone & Joint Ctr.*, 656 So. 2d 119, 122–23 (Miss. 1995) (concluding that because health care provider was not a party in the divorce action, its rights of collection were unaffected by the divorce judgment); *Alamance County Hosp., Inc. v. Neighbors*, 338 S.E.2d 87, 92 (N.C. 1986) (concluding that the common law doctrine that requires a father to pay for necessaries for his children survives the divorce and continues even though custody is awarded to the mother); *Aharoni v. Michael*, 598 N.E.2d 1215, 1218 (Ohio Ct. App. 1991) (concluding that the parents' collective responsibility to pay for the necessaries for their child is not impaired even if the parents' divorce assigns different obligations as between themselves).

generally deems essential to the health and well-being of a child. *See* 59 AM. JUR. 2D *Parent and Child* § 44 (1987). Further, the supreme court has previously stated that when a merchant sues a parent for necessaries, that merchant has the burden of proving that the articles sold were reasonably needed by a member of the family to whom they were sold. *See Sharpe Furniture, Inc. v. Buckstaff*, 99 Wis. 2d 114, 122, 299 N.W.2d 219, 223 (1980) (citing *Simpson Garment Co. v. Schultz*, 182 Wis. 506, 509–10, 196 N.W. 783, 784 (1924)). Therefore, a non-custodial parent is protected from a custodial parent's inappropriate expenditures because the non-custodial parent will be obligated to pay only for items or services that constitute necessaries. Accordingly, we conclude that the paternity judgment determines as between two parents who pays what expenses; it does not bind creditors who were not parties. Accordingly, it does not prevent Dean from recovering from Fields.

## CONCLUSION

¶ 20. We conclude that the transaction involved here was not a consumer credit transaction to which the WCA applied. We also conclude that a paternity judgment does not bar a non-party creditor from pursuing either parent for the costs of medical care provided to their child. Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.